PEOPLE v PEGENAU

Docket No. 96696. Argued April 6, 1994 (Calendar No. 6). Decided
August 31, 1994.

Robert P. Pegenau, Jr., was convicted by a jury in the Marquette
Circuit Court of unlawful possession of Valium and Xanax. The
Court of Appeals, CONNOR, P.J., and BRENNAN and MARILYN J.
KELLY, JJ., reversed, holding that because the defendant met
his initial burden of coming forward with some evidence of a
prescription, the prosecution should have been required to
prove the absence of a prescription beyond a reasonable doubt.
It further held that the prosecutor's impermissible argument
regarding allocation of the burden of proof and remarks to the
jury that the defendant was required to offer documentary
proof to rebut the statutory presumption of illegal possession
denied the defendant a fair trial (Docket No. 137109). The
people appeal.

In separate opinions, the Supreme Court reversed the judg-
ment of the Court of Appeals and reinstated the defendant's
conviction.

Justice MALLETT, joined by Justices LEVIN and BRICKLEY,
stated that MCL 333.7403; MSA 14.15(7403), which defines the
elements of the offense of possession with knowledge or intent
of a controlled substance, and MCL 333.7531; MSA 14.15(7531),
which places the burden of producing evidence of a prescription
for a controlled substance on the defendant, do not create an
unconstitutional criminal presumption. A defendant may claim
as an exemption to § 7403 possession of a substance by way of a
prescription. The burden of producing evidence of a prescrip-
tion under § 7531 may be satisfied by producing some compe-
tent evidence beyond a mere assertion of a prescription.

Section 7531 provides that a defendant seeking to establish
an exemption to § 7403 bears the burden of proving possession
of a prescription. In this regard, presence of a prescription is
analogous to an affirmative defense. Requiring the defendant
under § 7531 to bear the initial burden of proof regarding
authorization is not violative of the constitution because lack of
authorization clearly is not an element of the crime under
§ 7403.

While § 7531 does not define the quantum of evidence re-

quired to meet the burden of proof, some competent evidence is required. The defendant must come forward with more than a mere assertion of a prescription. While paper documentation is not always required, more than the defendant's assertion must be offered.

The prosecutor's remarks during opening and closing argument fairly and accurately outlined the law as it would be stated in the court's instructions to the jury, and otherwise was permissible comment on the evidence. Furthermore, the court's instructions were sufficient to remove any possibility that the jury would be misled into thinking that the defendant was required to produce actual documentary evidence of a prescription or to bear the burden of persuasion regarding an element of the offense.

Chief Justice CAVANAGH, joined by Justice LEVIN, concurring in part and dissenting in part, stated that where, as in this case, a prima facie case of possession of a controlled substance in violation of § 7403(2)(b) is made, the defendant may show an exception to or exemption from the statutory mandate by offering some competent evidence of a prescription during trial. At that point, the prosecution must establish the contrary beyond a reasonable doubt.

In this case, the defendant presented some competent evidence that he obtained the controlled substances pursuant to a valid prescription, sufficient to rebut the prima facie case of statutory violation. However, the defendant is not entitled to a new trial. The jury was properly instructed regarding the prosecution's burden of proof, and there is no reason to upset its finding that the prosecution proved the absence of a prescription beyond a reasonable doubt.

Justice BOYLE, joined by Justices RILEY and GRIFFIN, concurring in the result, stated that § 7531 places the burden of proof, both of production and persuasion, on a defendant claiming an exemption under the statute.

It is incumbent on a defendant charged with an offense regarding a substance that may be lawfully possessed pursuant to a license or order form to prove that possession is authorized by the existence of such permission. Possession of prescription drugs is subject to criminal penalty only when it is not authorized by a prescription. Both the burden of production and the burden of proving the exemption are on the person claiming it. The lead opinion endorses an interpretation of § 7531 that in future cases will shift only the burden of production to the defendant, thus requiring the prosecution to face the task of proving lack of a prescription beyond a reasonable doubt.

However, the remedy is not to create an evidentiary threshold based on an appellate court's evaluation of the credibility of a given defendant's testimony, which invades the factfinder's province, invites abuse by trial courts, and leaves the prosecution's predicament intact. The appropriate remedy is the one selected by the Legislature, which in the plain language of the statute has placed the burdens of proof and production on the defendant.

Section 7531 is an obvious and constitutional statute, which relieves the state of the burden of negating an exemption, and places the burden of proof of an exemption on the person claiming it. The approach of the lead opinion may reflect an unarticulated concern for the consequences of creating affirmative defenses that shift the burdens of production and persuasion. To the extent that it can be assumed that this is the concern, it should be clearly understood that § 7531 only creates an exemption to a regulatory measure and does not implicate the concerns raised by statutes that shift the burdens of production and persuasion of more traditional affirmative defenses. By contrast with more traditional crimes where an affirmative defense in effect concedes the facial criminality of the conduct and presents a claim of justification or excuse, an exemption to a regulatory scheme asserts that the defendant's conduct was outside the reach of the particular regulation. Regulatory schemes often involve conduct that on its face is not wrongful. In cases such as this, the conduct is not obviously wrongful.

Unlike a case of presumed wrongful conduct in which the prosecutor's burden is proportional to the defendant's proofs, a simple assertion by the defendant that possession is by prescription increases the prosecutor's burden of proof to the point that a conscientious jury may be obligated to find that the government had not shown guilt beyond a reasonable doubt. This increase in the prosecutor's burden is not rationally tied to the truth, but to the nature of the regulated activity. The Legislature understood how difficult it would be for a prosecutor to rebut a defendant's simple assertion in a case such as the present. It also understood how difficult it would be to regulate the activity employing such an approach. That presumably is why the Legislature placed the burdens of production and persuasion on the defendant. Thus properly understood, applying the exemption or exception provision of § 7531 as written bodes no ill jurisprudential consequences for other portions of this statute or other "true" affirmative defenses. The state has not sought to make unknowing possession of a controlled substance an offense by placing the burden on a

defendant to show lack of knowledge that what was possessed was a controlled substance.

Reversed and reinstated.

199 Mich App 161; 501 NW2d 211 (1993) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Terrence E. Dean,* Assistant Prosecuting Attorney, for the people.

*Mark Peter Stevens* for the defendant.

MALLETT, J. In this criminal matter, the Court of Appeals reversed defendant Robert Paul Pegenau, Jr.'s, jury conviction for unlawful possession of Valium and Xanax.[1] We granted the prosecutor's application for leave to appeal[2] to determine: (1) the constitutionality of MCL 333.7403; MSA 14.15(7403) and MCL 333.7531; MSA 14.15(7531), that define the offense of possession of a controlled substance and place the burden of proving a prescription on defendant, and (2) whether the trial court erred in denying defendant's motions for a directed verdict and for a new trial. Because we find that §§ 7403 and 7531 do not create an unconstitutional criminal presumption and that the trial court did not err in denying defendant's motions, we reverse the decision of the Court of Appeals and reinstate defendant's conviction.

I

On February 1, 1988, defendant was arrested for drunk driving. Pursuant to a custodial search, an officer discovered a bottle of pills in his jacket pocket. Some of these pills were later identified as

[1] MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b). 199 Mich App 161; 501 NW2d 211 (1993).

[2] 444 Mich 914 (1994).

Valium and Xanax.[3] Defendant was charged with violation of MCL 333.7403(2)(b); MSA 14.15(7403)(2)(b), for unlawful possession of Valium and Xanax. A jury convicted defendant as charged. The trial court sentenced him to sixty days in jail and twenty-four months probation.

At trial, the sole issue was whether defendant possessed the drugs pursuant to a doctor's prescription.[4] Section 7531 places the burden of proving existence of a prescription on the defendant:

> (1) It is not necessary for this state to negate any exemption or exception in this article in a complaint, information, indictment, or other pleading or in a trial, hearing, or other proceeding under this article. The burden of proof of an exemption or exception is upon the person claiming it.
>
> (2) In the absence of proof that a person is the authorized holder of an appropriate license or order form issued under this article, the person is presumed not to be the holder of the license or order form. The burden of proof is upon the person to rebut the presumption. [MCL 333.7531; MSA 14.15(7531).]

At the beginning of trial, outside the presence of the jury, defense counsel posed the issue how the burden of proof pursuant to § 7531 should be handled. Defense counsel took the position that

---

[3] Valium is a brand name for the drug diazepam, indicated for the management of anxiety disorders and relief of skeletal muscle spasms. Xanax is a brand name for alprazolam, a central nervous system depressant indicated for management of anxiety disorders. *Physicians' Desk Reference* (47th ed), pp 2027, 2482. Both are classified as schedule four drugs under the Controlled Substances Act. Robert Kelly, a Michigan Department of State Police laboratory scientist, testified as an expert for the prosecution that schedule four drugs are generally those with known medical indications having some risk of dependence, although less risk than those drugs classified in schedules one through three.

[4] Defendant has never denied that he possessed the controlled substances.

lack of a prescription is an element of the offense, and that the burden of persuasion would shift back to the prosecution once testimony was elicited recounting defendant's assertions that he possessed the substances pursuant to a doctor's prescription.

The trial court indicated that it would study the issue, but, rather than keep the jury waiting, the attorneys should proceed with opening arguments without referring to the burden of proof issue. However, the assistant prosecutor stated in opening argument:

> If there is some evidence in this case that there was a prescription or some type of evidence that there might have been a prescription in this case, then it will be my job to prove to you that there was, in fact, no valid prescription for these drugs. Now, what I want you to consider in this case on that point is, is there a prescription presented to you? Do you have a piece of paper that indicates that a doctor wrote it out and gave him a prescription? Is there a doctor—going to be a doctor in Court testifying? Yes, I gave him a prescription for these drugs on this—on such and such a date.

Defense counsel objected on the ground that the argument improperly shifted the burden of proof to the defendant. The trial court overruled the objection, stating that the prosecutor could outline what he thought the proofs would show.

The prosecution presented its case through testimony of the arresting officer and the officer who booked defendant. The arresting officer testified that at the time of the arrest, he asked defendant if he was taking any medication, if he was under a doctor's care, and if he was suffering from any physical disabilities. Defendant answered "no" to each of these questions. Later, while booking the defendant, an officer discovered an unlabeled white bottle in defendant's jacket pocket containing an

assortment of pills, including Xanax and Valium.[5] At this point, defendant told officers that he had obtained these pills pursuant to a doctor's prescription for treatment of back pain. At the close of the prosecution's case, defendant moved for a directed verdict of acquittal. The motion was denied.

Defendant testified that he has had a longstanding and recurrent back problem dating back to the 1970s. He explained that it frequently flared up while he was working at out-of-town locations in the air conditioning and refrigeration business. He testified that he had been treated in as many as twelve cities for such work-related injuries by various doctors who would prescribe tranquilizers, such as Valium, and pain killers, such as Darvocet or Tylenol with codeine. Defendant testified that because he did not have medical insurance, he paid for the prescribed medications in cash. He would empty the remnants of his various prescriptions into a single plastic container and carry this with him for convenience. He conceded that he was unable to remember the names of any of his treating physicians or to produce a written prescription or other written documentation for the drugs.

Defendant's dentist testified that dental records showed he had prescribed Tylenol with codeine and Darvocet for defendant in 1987.[6] Defendant also produced a 1985 drug store receipt for two unidentified prescriptions. A physician specializing in clinical pathology, Dr. Ronald Sanders, testified that after examining defendant and reviewing his medical records, the defendant did in fact suffer

[5] The bottle contained the following mixture of pills: 8 Valium, 26 diazepam, 8 Halcion, 1 Tranxene, 1½ Xanax, 1 Tylenol with codeine.

[6] Tylenol with codeine was found in defendant's possession along with the medications underlying the charge, Valium and Xanax.

from a chronic back condition and that such a condition would be treated with drugs such as Xanax, a muscle relaxant, and Valium, a sedative tranquilizer. Dr. Sanders further testified that the unlabeled bottle containing the drugs found in defendant's jacket pocket was a pill specimen bottle of the type given out by physicians dispensing from their offices, as was common practice five to ten years ago. The defense also elicited testimony that the drugs were not a "bootleg" version, inferring that defendant did not gain possession through unlawful channels.

In closing argument, the prosecutor outlined the elements of the offense. He stated:

> The only possible question is then, the Judge is going to tell you, that there is a fourth element. Once some evidence of a prescription has been introduced in this trial—and there is some evidence of that, then it's the prosecution's burden to prove beyond a reasonable doubt, that there was no prescription. And that's what this case comes down to. Was there a prescription or not?
>
> As you are making that decision on the fourth element—the first three have been proven to you beyond a reasonable doubt, by the defendant's own admission—as you're making your decision on the fourth element, you are to consider credibility.

Later in the argument, the prosecutor commented on defendant's inability to produce documentary proof of a prescription and his inability to remember any of his treating physicians.[7] Defendant objected to these comments and now argues that

---

[7] The defendant points to the following portions of the prosecutor's closing argument as being objectionable:

> The judge is also going to instruct you that you are to consider how reasonable the person's testimony is, in light of all of the other evidence in this case. And I would suggest to you that the defendant's claim that he has a prescription, is not

through such argument, the prosecutor impermissibly shifted the burden of proof to the defendant.

The trial court instructed the jury that the defendant was not required to prove his innocence or to introduce any evidence at all. The court further instructed that the prosecution was required to prove beyond a reasonable doubt that the controlled substances were not obtained as a result of a valid prescription. The jury was not instructed regarding defendant's burden pursuant to § 7531.[8]

---

backed up by any other evidence. The only evidence that you have that there's a prescription in this case is, that the defendant claims he had one.

So let's talk about that. Was there a prescription or was there not a prescription. That's basically what it boils down to. And what evidence is there that there was a prescription? Again, the only evidence in this case that you have seen, even from the defense's expert witness in this case is, the defendant said he had a prescription for Diazepam and for Alprazolam, for Valium and Xanax.

Was there a prescription form? None. Was [sic] there any prescription bottles? None. Was there any receipt from a doctor, saying I have received this amount of cash for this doctor's visit and I prescribed this amount of medicine. No.

* * *

Now, he's gotten on the stand and said, hey, it ain't yesterday, and testified to something that happened two and a half years ago. He can remember his statements to the police officers, he can remember many many other things. All we are asking is, could you remember the doctor three months before you were arrested. Can you provide us with some evidence that there was a prescription . . . .

* * *

The evidence in this case is quite clear, ladies and gentlemen, there was no prescription. The only evidence that you have, is the defendant's claim. And that claim, in light of all of the other evidence in this case, is not plausible and not believable. If it's not plausible and not believable, there is no evidence that he has a prescription, and the prosecution has carried its burden of proof.

[8] The record shows that at the close of trial, the court and both parties agreed the prosecutor was to bear the burden of proving lack of a prescription. During closing argument, the prosecutor stated, "[o]nce some evidence of a prescription has been introduced in this

After conviction and sentencing, defendant moved for new trial. He argued error in the denial of his motion for directed verdict, that the verdict was against the great weight of the evidence, and that the prosecution had engaged in an improper burden-shifting argument. The trial court denied the motion, commenting that defendant could not have satisfied his statutory burden merely through introduction of his own self-serving statements. The court opined that if such statements were all that was required, the prosecution would face the impossible burden of proving a negative, that defendant did not have a prescription. The court ruled that defendant did not meet his burden of coming forward with some evidence beyond his own statement. When pressed by defense counsel, the court indicated that paper documentation of a prescription was not required in every case, but that here the evidence was insufficient to meet the burden.[9]

The Court of Appeals reversed, holding that the trial court erred in not granting defendant's motion for new trial. The Court indicated that because defendant had met his initial burden by coming forward with some evidence of a prescription, the prosecution should have been required to prove absence of a prescription beyond a reasonable doubt. The Court also suggested that defendant was denied a fair trial because of the prosecutor's impermissible burden-shifting argument and the prosecutor's remarks to the jury that defendant had to produce documentary proof to

trial—and there is some evidence of that, then it's the prosecution's burden to prove beyond a reasonable doubt, that there was no prescription."

[9] The trial court's ruling on the motion for new trial is inapposite to its earlier ruling at trial. The court ruled at trial that because defendant had met his initial burden, the jury would not be instructed that he had the burden of proving a prescription.

rebut the statutory presumption of illegal possession. 199 Mich App 161, 163; 501 NW2d 211 (1993).

We granted the prosecutor leave to appeal and hold that the Court of Appeals erred in reversing defendant's conviction and remanding for a new trial.

II

Defendant challenges the constitutionality of § 7531, claiming its allocation of the burden of proof regarding an exemption constitutes an impermissible presumption. He looks to *Turner v United States,* 396 US 398; 90 S Ct 642; 24 L Ed 2d 610 (1970) for support. In *Turner,* the defendant was convicted of unlawful possession of imported heroin and imported cocaine. The jury was permitted to presume that the drugs were imported on the basis of mere possession. The Supreme Court ruled that while the presumption regarding heroin was a fair one, because of the utter absence of domestic production, it was not fair with respect to cocaine, because cocaine was, at that point, predominately of domestic production.

Defendant argues that Michigan has followed the same test as that applied in *Turner.* The test requires that for the presumption to be upheld, there must be " 'substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.' " *People v Rafalko,* 26 Mich App 565, 569; 182 NW2d 732 (1970), quoting *Leary v United States,* 395 US 6, 36; 89 S Ct 1532; 23 L Ed 2d 57 (1969). See also *People v Battle,* 161 Mich App 99, 101; 409 NW2d 739 (1987).

Defendant argues that there is no basis for feeling substantially assured that the mere act of possession of Valium or Xanax equates with un-

lawful possession. In fact, defendant argues, it is more likely than not that when these commonly prescribed drugs are found in someone's possession, they are lawfully possessed. Defendant concludes that this Court should therefore find the statutory presumption violative of due process.

Although defendant's argument appears to have some force, it misses the mark. Defendant casts the statute in terms of a presumption. While *Turner* provides the appropriate analysis relevant to presumptions, the statutory provisions involved here do not create a presumption. Rather than allowing the jury to presume an element of the crime on the basis of proof of a poorly correlated fact, § 7531 merely provides that a defendant seeking to establish an exemption to the statute bears the burden of proof. In this regard, presence of a prescription is analogous to an affirmative defense.

The United States Supreme Court discussed the constitutionality of requiring a defendant to bear the burden of proof relevant to an affirmative defense in *Patterson v New York,* 432 US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977).[10] Pursuant to *Patterson,* a statute that places the burden of proof on a defendant is not violative of due process if the fact the defendant is required to prove is not determinative of an essential element of the crime as defined in the statute. McCormick, Evidence (3d ed), § 347, p 990, describes the test in this way:

> Only a true affirmative defense . . . may operate to allocate the burden of persuasion to the accused. Such a defense would consist of facts which exonerate the defendant or reduce the de-

---

[10] We note that while *Patterson* dealt with shifting the burden of *persuasion,* in this case the trial court and the parties have interpreted § 7531 as involving the burden of *production.* The relevance of this distinction to today's holding will be discussed later in this opinion. See n 13.

gree of the offense and do not simply disprove an element of the crime.

Applying this test, we agree with the analysis of the Court of Appeals in *People v Bailey*, 85 Mich App 594; 272 NW2d 147 (1978). *Bailey* also involved the Controlled Substances Act and allocation of the burden of proof regarding authorization to the defendant.[11] *Bailey* explained that requiring the defendant to bear the initial burden of proof regarding authorization is not violative of the constitution because lack of authorization is by statute clearly not an element of the crime.

> Unquestionably, as a matter of constitutional law the people must prove beyond a reasonable doubt every element of the crime charged. *In re Winship*, 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Because [MCL 335.356(2); MSA 18.1070(56)(2)] provides that the people need not prove lack of authorization, and because it is axiomatic that a statute must be construed so as to render it constitutional whenever possible, we believe that the conclusion that, under the present statute, lack of authorization is not an element of the crime of delivery is inescapable. [85 Mich App 597, n 3.]

The statute here is analogous to the concealed weapon statute interpreted by this Court in *People v Henderson*, 391 Mich 612; 218 NW2d 2 (1974). The statutory provisions at issue there, MCL 750.227; MSA 28.424 and MCL 776.20; MSA 28.1274(1), prohibited carrying a concealed weapon in a vehicle, without a license, and placed upon

---

[11] *Bailey* concerned delivery of a controlled substance in violation of MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), since repealed by 1978 PA 368 and replaced by MCL 333.7401; MSA 14.15(7401). It did not involve possession of controlled substances as in the present case. Although the relevant sections define separate offenses and their wording is slightly different, a comparison is instructive. The statutory scheme and burden allocation is analogous.

the defendant the burden of proving any exemption contained in the act.[12]

The *Henderson* Court noted that the operative words of the statute were " 'any person who shall carry a pistol . . . in any vehicle operated or occupied by him . . . shall be guilty of a felony.' " *Id.* at 616. This Court held that the language concerning absence of a license did not add an element to the crime, but simply acknowledged that persons may be authorized by license to carry a pistol. Regarding placing the burden of proof on a defendant to show a license, this Court stated:

> Accordingly we hold that upon a showing that a defendant has carried a pistol in a vehicle operated or occupied by him, [a] prima facie case of violation of the statute has been made out. Upon the establishment of such a prima facie case, the defendant has the burden of injecting the issue of license by offering some proof—not necessarily by official record—that he has been so licensed. The people thereupon are obliged to establish the contrary beyond a reasonable doubt.
>
> We read MCL 776.20; MSA 28.1274(1), *supra* not as absolving the state from proving one element of

---

[12] The statutory provisions provide in pertinent part:

(2) A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person,.without a license to carry the pistol as provided by law . . . .
(3) A person who violates this section is guilty of a felony, punishable by imprisonment for not more than 5 years, or by a fine of not more than $2,500.00. [MCL 750.227; MSA 28.424.]

In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but does not shift the burden of proof for the violation. [MCL 776.20; MSA 28.1274(1).]

a crime, for to do so would vitiate the presumption of innocence. Rather, we read this statute as an appropriate legislative expression that lack of a license is not an element of the offense . . . . [*Id.* at 616-617.][13]

Similarly, the statute at issue here prohibits knowing or intentional possession of a controlled substance without a valid prescription or other authorization. The statute provides:

> *A person shall not knowingly or intentionally possess a controlled substance* or an official prescription form or a prescription form *unless the controlled substance,* official prescription form, or prescription form *was obtained directly from, or pursuant to, a valid prescription* or order of a practitioner while acting in the course of the practitioner's professional practice, *or except as otherwise authorized by this article.* [MCL 333.7403(1); MSA 14.15(7403)(1). Emphasis added.]

We hold that the operative words defining the elements of the crime are "A person shall not knowingly or intentionally possess a controlled substance . . . ." The language concerning a prescription or other authorization refers to an exemption rather than an element of the crime.[14]

---

[13] We note that *Henderson* was decided pre-*Patterson.* While *Henderson's* holding is limited to allowing shifting the burden of production, *Patterson* held that as long as the shift is not on an element of the offense, the burden of persuasion can constitutionally be shifted to the defendant. In the case before us today, we decline to extend the *Henderson* holding to encompass shifting of the burden of persuasion. Instead, we limit our holding to the constitutionality of § 7531 as it was applied in this case. Because the trial court permitted only shifting of the burden of production, and only that issue has been argued in this Court by the parties, we leave for another day the question whether in Michigan a *Patterson* analysis will allow shifting the burden of persuasion for an affirmative defense.

[14] In this regard, *United States v Forbes,* 169 US App DC 217, 219; 515 F2d 676 (1975), is instructive. Interpreting nearly identical language in the federal Controlled Substances Act, § 404(a), 21 USC

Because § 7531 requires defendant to bear the
burden of proof regarding presence of a prescrip-
tion, and that fact is not determinative of an
essential element of the crime of possession of
Valium and Xanax, § 7531 is not violative of due
process. Accordingly, we reject defendant's consti-
tutional argument.[15]

---

844(a), the United States Court of Appeals, District of Columbia
Circuit, held that the phrase "unless such substance was obtained
directly, or pursuant to a valid prescription" establishes a defense to
be raised by the accused rather than an element of the offense to be
proven by the government. Comprehensive Drug Abuse and Control
Act of 1970.

[15] Recognizing that *Patterson* left open the question what are the
constitutional limits to a state's power to define crimes and prescribe
penalties, we find that many factors need to be taken into account in
testing the constitutionality of affirmative defenses.

The relevant factors to consider include: (1) whether the burden
being placed on the defendant is one of production or persuasion; (2)
whether the state could constitutionally punish the defendant on the
basis of proof of only those elements on which the prosecution retains
the burden of proof; and (3) other considerations, such as the nature
of the burden the state has historically had regarding the element in
question and which party has ready access to the facts necessary to
establish it. See McCormick, *supra,* § 348, p 999.

As applied in this case, the burden placed on defendant was a
burden of production, not a burden of persuasion. The record reveals
that the trial court did not instruct the jury regarding § 7531. In-
stead, the court, finding that defendant had met his initial burden of
production regarding absence of a prescription, instructed the jury
that the prosecutor must prove lack of a prescription beyond a
reasonable doubt.

Regarding the second factor, the Legislature can make even seem-
ingly innocent acts unlawful if these acts have a tendency to affect or
endanger the public in connection with health, safety, morals or
general welfare. See *Detroit v Bowden,* 6 Mich App 514, 520; 149
NW2d 771 (1967); *Detroit v Wedlow,* 17 Mich App 134; 169 NW2d 145
(1969). The state has a substantial interest in regulating these addic-
tive controlled substances.

Other considerations also validate allocation of the burden of proof
to defendant. The present statute has been in effect since 1978. The
offense is of statutory origin; not one having traditional common-law
elements. This is not an instance of the Legislature reformulating
deeply rooted elements of a common-law offense in order to reallocate
the burden of proof. Finally, the facts underlying the exemption in
this instance are uniquely within defendant's control. Fairness sup-
ports placing at least the burden of production, as occurred in this
case, on defendant.

### III

Having determined the constitutionality of §§ 7403 and 7531, we turn to the operation of the statute in the present case. Defendant argues that the trial court erred in denying his motion for a directed verdict. He contends that the police officers' testimony recounting his assertion that he had a prescription satisfied his burden of production. Defendant reasons that, at this point, the prosecution was required to prove lack of a prescription beyond a reasonable doubt and that it failed to do so.

The issue as we see it is whether defendant met his burden pursuant to § 7531. The section does not define the quantum of evidence required to meet defendant's burden. However, defining the evidentiary threshold is clearly within the power of this Court. We have held that it was within this Court's power to allocate to the defendant the burden of proving an entrapment defense by a preponderance of the evidence. *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977). Similarly, this Court may define the evidentiary threshold that is to apply pursuant to § 7531.

At the time defendant moved for a directed verdict, he had not presented any evidence of a prescription. Indeed, the only indication of a prescription came from a police officer called by the prosecution who testified that defendant informed him that he had a prescription. We hold that this alone is insufficient to meet defendant's burden of proof pursuant to § 7531. If the Controlled Substances Act is to be enforceable, such self-serving assertions, taken alone, cannot be sufficient to allow a directed verdict of acquittal.

If such evidence were enough to satisfy defendant's burden under § 7531, the prosecution would

face the insurmountable task of producing evidence to prove lack of a prescription. The only method to effectively rebut the claim of a prescription, as aptly pointed out by the trial court, would be to contact the thousands of practicing physicians to prove the negative, that each had not prescribed the drugs to the defendant. The Legislature could not have intended such an absurd result.[16]

Defendant also claims that the trial court erred in denying his motion for a new trial. The Court of Appeals agreed with this claim. We disagree.

The Court of Appeals held that because defendant produced some competent evidence of a prescription, the prosecution "should have been required then to prove beyond a reasonable doubt that defendant lacked authorization for the controlled substances."[17] 199 Mich App 165.

The Court of Appeals correctly determined that the "some competent evidence" standard applies. *People v Wooster,* 143 Mich App 513, 517; 372 NW2d 353 (1985); *People v Bailey, supra; People v Bates,* 91 Mich App 506, 516; 283 NW2d 785 (1979). However, we hold that to satisfy this standard in the context of the possession statute, defendant must come forward with more than his own mere assertion that he had a prescription.

[16] Our interpretation that § 7531 requires more than a defendant's bare assertion that he had a prescription conforms with general rules of statutory construction. When possible, statutes should be interpreted to avoid absurd results and to give them full force and effect. See *People v Schoenberg,* 161 Mich 88, 93-94; 125 NW 779 (1910); *People v Keeth,* 193 Mich App 555, 564; 484 NW2d 761 (1992); *Arnold v Ogle Construction Co,* 333 Mich 652, 663; 53 NW2d 655 (1952); *People v Gilliam,* 108 Mich App 695, 699; 310 NW2d 843 (1981).

[17] Curiously, the record reveals that at the close of trial, the court did instruct the jury that the prosecution must prove absence of a prescription beyond a reasonable doubt. The jury was not instructed regarding defendant's burden of proving the exemption because the court had determined that defendant met his burden of producing some competent evidence of a prescription.

While paper documentation is not always required, more than defendant's own assertion is required.[18]

In this case, defendant's evidence consisted of his own testimony regarding how he came to possess the various medications found in his jacket pocket, testimony by Dr. Sanders indicating that the drugs were the type that might have been prescribed for defendant's back problems, and testimony by defendant's dentist that he had prescribed Tylenol with codeine, one of the drugs found in defendant's possession for which he was not charged. Circumstantial evidence was elicited that the drugs were not a "bootleg" version that might have inferred that they were obtained unlawfully. An old drug store receipt that was never linked to the specific controlled substances at issue was also produced.

While Dr. Sanders' testimony validated that defendant had a back problem for which Valium and Xanax may indeed be prescribed, this evidence was not competent evidence that defendant did in fact have a prescription for the drugs. The testimony helped substantiate defendant's story about why he possessed the drugs, but did not provide competent evidence for his claim of a prescription.[19] Further, his testimony that the white container found in defendant's pocket was of the type frequently given by physicians dispensing from their offices five to ten years ago does not lend any support to defendant's claim. Defendant

[18] Contrary to what Chief Justice CAVANAGH contends in his concurrence, our holding does not "demand[ ] more than 'some competent evidence.'" *Post* at 308. We merely hold that to meet the "some competent evidence" standard, a defendant must offer evidence relevant to the existence of a prescription consisting of more than his own assertion that the drugs in question were prescribed.

[19] We also note that the jury did not find Dr. Sanders' testimony compelling in this regard.

never testified that he obtained any of the pills in his possession from a doctor's office. Had the pills been found in the typical amber-colored labeled prescription bottle, this might have been some competent evidence of a prescription. However, we fail to see any significance that testimony regarding the hypothetical origins of the white bottle could have with respect to defendant's claim.

Likewise, the dentist's testimony does not provide competent evidence of a prescription for Valium and Xanax. He testified about prescribing Tylenol with codeine in 1987. We fail to see any connection between that testimony and defendant's claim for having prescriptions for the Valium and Xanax found in his possession in 1988.

Circumstantial evidence that the drugs were not a "bootleg" version is not competent evidence of a prescription. Unlawful possession of Valium and Xanax can occur in numerous ways other than through a black market trade. Even if Mr. Pegenau had obtained the drugs from a family member or friend, who had obtained them pursuant to a valid prescription, his possession would be unlawful under the act.

Finally, the 1985 Shop-Ko pharmacy receipt does not provide competent evidence of a prescription. Defendant's explanation for being unable to locate any prescribing physicians is that he was out of town when he sought treatment for his recurrent back problem. We do not see the relevancy of a local unspecific pharmacy receipt to defendant's claim of having obtained out-of-town prescriptions for these drugs.

Defendant's testimony consisting of his assertion that he had a prescription is the only evidence directly related to his claim of having a prescription. As explained earlier, this cannot be sufficient

to establish some competent evidence of a prescription.[20]

While the trial court erred initially in finding that defendant met his burden and in failing to instruct the jury regarding defendant's burden pursuant to § 7531, the error did not prejudice defendant. Defendant had the advantage of having the jury instructed that the prosecution bore the burden of proving lack of a prescription. It is telling that the jury, having weighed what little evidence was offered by the prosecution against defendant's testimony, determined that the prosecution had proven lack of a prescription beyond a reasonable doubt.

The prosecution's evidence of lack of a prescription consisted of the officers' testimony that defendant stated he was not under a doctor's care and did not have any medical problems at the time of his arrest, and testimony regarding the nature of the unmarked, unlabeled white bottle containing the pills when found in defendant's pocket. While the prosecution's evidence is certainly not substantial, it is typical of the kind of evidence discoverable in these types of cases.

We also reject defendant's argument that comments made by the prosecutor during opening and closing argument resulted in improperly relating to the jury the nature and allocation of the rela-

---

[20] Defendant's evidence regarding a prescription does not fail solely because it was his own testimony. Indeed, we note that he offered testimony from his dentist and a physician. Instead, defendant's evidence fails because he offered nothing more than an explanation of why he might have been prescribed the drugs, and his own assertion that he had a prescription. We recognize that in some instances, a defendant's own testimony may be enough to meet his burden. For example, a defendant may testify that he went to a specific clinic and saw a certain physician and give the approximate date of his visit. While this defendant's testimony may not be verifiable, perhaps because the clinic is no longer in existence, his testimony in such a situation *may* be enough to meet his burden. A decision in this regard would be within the trial court's discretion.

tive burdens of proof. Instead, the record reveals
that the prosecutor's remarks fairly accurately
outlined the law as it would be stated in the
instruction of the jury by the court and otherwise
were permissible comment on the evidence.[21]

The prosecution is permitted to comment on and
draw inferences from the testimony of a witness,
including a criminal defendant, and may argue
that the witness is not worthy of belief. *People v
Buckey,* 424 Mich 1, 15; 378 NW2d 432 (1985),
citing *People v Wirth,* 108 Mich 307; 66 NW 41
(1896); *People v Couch,* 49 Mich App 69; 211 NW2d
250 (1973). Mr. Pegenau testified that he could not
find his prescription papers and could not remem-
ber the names or locations of the physicians who
allegedly prescribed the drugs at issue. The pros-
ecutor commented on these aspects of defendant's
testimony in his closing argument. He suggested
that defendant's inability to produce such evidence
undermined the credibility of his assertion that he
had a prescription. The prosecutor was within his
right to make such comments. Indeed, because of
the near impossibility of attaining evidence to
prove lack of a prescription, commenting on the
weakness of defendant's case was his only re-
course.

Furthermore, the jury was instructed that such
comment was not evidence. It was also instructed
on the presumption of innocence and that the
burden of proof regarding the elements of the
crime was on the prosecution. As noted earlier, the
jury was even instructed that the prosecution bore
the burden of proving lack of a prescription. These
instructions were sufficient to remove any possibil-
ity that the jury would be misled into thinking
that defendant was required to produce actual

[21] See n 7 and accompanying text.

documentary evidence of a prescription or was
required to bear the burden of persuasion regard-
ing an element of the offense.

IV

We have concluded that defendant did not pro-
duce evidence sufficient to meet his burden under
§ 7531. In so doing, we have left open the question
whether in Michigan § 7531 can or should be
interpreted to shift to defendant the burden of
persuasion in addition to the burden of production.
Justice Boyle, in her concurrence, would have this
Court interpret the statute as shifting the entire
burden of persuasion to defendant. Such a holding
would have far-reaching implications and should
be approached with extreme caution. We think it
especially unwise to embrace Justice Boyle's view
without the benefit of full argument and briefing
by the parties.

Nevertheless, we are compelled to refute Justice
Boyle's assertion that our decision today "ignores
the plain meaning of the statute." *Post* at 309.
Contrary to Justice Boyle's assertion, § 7531 belies
a "plain meaning" interpretation.

The phrase "burden of proof" is capable of two
alternate definitions. Black's Law Dictionary
states:

> Burden of proof is a term which describes two
> different concepts; first, the "burden of persua-
> sion," which under traditional view never shifts
> from one party to the other at any stage of the
> proceeding, and second, the "burden of going for-
> ward with the evidence," which may shift back
> and forth between the parties as the trial pro-
> gresses. [Black's Law Dictionary (5th ed), p 178.]

Far from being plain, the Legislature's use of

the term "burden of proof" is ambiguous. Our Court of Appeals has consistently interpreted the language in this statute as shifting only the burden of going forward with the evidence, also known as the burden of production, to the defendant. *People v Bates, People v Bailey,* and *People v Wooster, supra.*

This Court has interpreted similar statutory provisions as shifting the burden of production, rather than the burden of persuasion. In *People v Dempster,* 396 Mich 700; 242 NW2d 381 (1976), the following language in the Uniform Securities Act that was then in effect was interpreted as shifting only the burden of production to defendant: " 'In any proceeding under this act, the burden of proving an exemption or an exception is upon the person claiming it.' " *Id.* at 711, quoting the Uniform Securities Act then in effect.

> Recently, in *People v Henderson,* 391 Mich 612, 616; 218 NW2d 2, 4 (1974), we considered whether, in a prosecution for carrying a concealed weapon, by placing the burden of proving a license on the defendant the statute absolved the state of its burden of proving its entire case beyond a reasonable doubt. We stated that once the prosecution establishes a prima facie case of violation of the statute, "the defendant has the burden of injecting the issue of license by offering some proof . . . that he has been so licensed. The people thereupon are obliged to establish the contrary beyond a reasonable doubt." We interpreted the statute in that manner "not as absolving the state from proving one element of the crime, for to do so would vitiate the presumption of innocence." *Id.* We are cognizant of the fact that the concealed weapons statute speaks of the "burden of establishing" the license, and states that this does not shift the "burden of proof for the violation." While that language might be preferable to that of the instant statute,

the principle is not different. [*People v Dempster,
supra* at 712.]

We recognize that these cases, with the exception
of *People v Wooster, supra,* were decided before
the Supreme Court's pronouncement in *Patterson.*
However, we decline to reinterpret the statute in
the guise of "plain meaning" so that it lines up
with the United States Supreme Court's pro-
nouncement, especially without the benefit of ar-
gument and briefing by the parties.

Just as there is no "plain meaning" in the
phrase "burden of proof," neither is there a "plain
meaning" in the first sentence of § 7531. Justice
Boyle argues that because the statute provides
that "[i]t is not necessary for this state to negate
any exemption or exception in this article," the
statute plainly shifts the entire burden of persua-
sion regarding the existence of a prescription to
the defendant. Rather than having a plain mean-
ing, this portion of the statute is capable of two
different interpretations: (1) it is not necessary for
this state to *ever* negate any exemption, or (2) it is
not necessary for the state to *initially* negate any
exemption.

Justice Boyle's assumption that the phrase is
only consistent with the first interpretation is
refuted by an examination of the federal Con-
trolled Substances Act, 21 USC 885(a)(1):

> *It shall not be necessary for the United States to
> negative any exemption or exception set forth in
> this title* in any complaint, information, indict-
> ment, or other pleading or in any trial, hearing, or
> other proceeding under this title, *and the burden
> of going forward with the evidence with respect to
> any such exemption or exception shall be upon the
> person claiming its benefit.* [Emphasis added.]

The federal statute, after which our own is modeled, has almost identical wording in regard to the first sentence. However, the federal statute, unlike our own, describes the defendant's burden of proof as a "burden of going forward with the evidence." Obviously, the federal legislature did not intend in the first sentence to mean that it would not *ever* be necessary for the government to negate an exemption, because this interpretation would render the first sentence to be entirely in conflict with the language concerning a burden of going forward with the evidence. After a defendant has met his burden of going forward with evidence on an issue, the burden shifts to the prosecution to prove this issue beyond a reasonable doubt. Choice of the specific "burden of going forward with the evidence" language clarifies that the first sentence actually means that the government does not have to negate the existence of a prescription until the defendant has come forward with evidence that he did have a prescription.

Far from contravening the statute's "plain meaning," we have merely assessed the evidence offered by this defendant and have found that it is insufficient to meet his burden under § 7531 because that section has been consistently applied by the courts of this state and has been interpreted and applied by the trial court below.

V

In summary, we find that MCL 333.7403; MSA 14.15(7403) and MCL 333.7531; MSA 14.15(7531) do not create an unconstitutional criminal presumption. Section 7403 defines the elements of the offense as possession of a controlled substance with knowledge or intent. A defendant may claim as an exemption to the statute that he possessed the

substances pursuant to a prescription. Section 7531, as it operated in this case, placed the burden of producing evidence of a prescription on the defendant. To satisfy his burden under § 7531, defendant was required to produce some competent evidence, beyond his mere assertion, that he did in fact have a prescription. Because defendant failed to meet this burden, we reinstate his conviction and reverse the decision of the Court of Appeals.

LEVIN and BRICKLEY, JJ., concurred with MALLETT, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). While I concur in the holding of the lead opinion, reinstating the defendant's convictions, I dissent from its characterization of "some competent evidence."

I

The only issue before this Court[1] is whether nondocumentary evidence can be sufficient to rebut a prima facie case of a statutory violation of MCL 333.7403(1); MSA 14.15(7403)(1).[2] The general

---

[1] This Court granted the state's application for leave to appeal. In its brief, the state framed the question presented as:

> Did the trial court exercise its sound discretion by requiring defendant to produce proof, beyond his own statement that he had a prescription, to rebut the presumption that his possession of drugs was unlawful?

[2] A person shall not knowingly or intentionally possess a controlled substance . . . unless the controlled substance . . . was obtained directly from, or pursuant to, a valid prescription . . . . [MCL 333.7403(1); MSA 14.15(7403)(1).]

(1) It is not necessary for this state to negate any exemption or exception in this article in a complaint, information, indict-

question, as well as its resolution, is in no means novel or foreign to our jurisprudence.

We have reviewed the general question in cases involving prosecutions for carrying a concealed weapon[3] and selling unregistered securities in violation of the Uniform Securities Act.[4] In *People v Henderson*, 391 Mich 612; 218 NW2d 2 (1974), the defendant, who was convicted of carrying a concealed weapon in a motor vehicle, argued that the state failed to prove an essential element of the crime, specifically the absence of a gun permit. The prosecutor asserted that a statutory presumption existed, absolving the state of proving non-licensure.[5] This Court agreed:

[W]e hold that upon a showing that a defendant has carried a pistol in a vehicle operated or occupied by him, prima facie case of violation of the statute has been made out. Upon the establishment of such a prima facie case, the defendant has the burden of injecting the issue of license by *offering some proof—not necessarily by official record*—that he has been so licensed. The people

ment, or other pleading or in a trial, hearing, or other proceeding under this article. The burden of proof of an exemption or exception is upon the person claiming it.

(2) In the absence of proof that a person is the authorized holder of an appropriate license or order form issued under this article, the person is presumed not to be the holder of the license or order form. The burden of proof is upon the person to rebut the presumption. [MCL 333.7531; MSA 14.15(7531).]

[3] MCL 750.227; MSA 28.424.

[4] MCL 451.701; MSA 19.776(301).

[5] The applicable statute states:

In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof for the violation. [MCL 776.20; MSA 28.1274(1).]

thereupon are obliged to establish the contrary
beyond a reasonable doubt. [*Id.* at 616. Emphasis
added.]

While we concluded that the statute imposed the
burden of production on the defendant, we explic-
itly noted that something less than documentary
evidence could fulfill this burden.

In *People v Dempster,* 396 Mich 700, 711; 242
NW2d 381 (1976), we held that MCL 451.802(d);
MSA 19.776(402)(d), now § 402(c), of the Uniform
Securities Act did not unconstitutionally require
the defendant to prove his innocence. Similar to
the statute at issue in the instant case, the Uni-
form Securities Act provides:

In any proceeding under this act, the burden of
proving an exemption or an exception is upon the
person claiming it. [MCL 451.802(c); MSA
19.776(402)(c).]

When rejecting the defendant's constitutional chal-
lenge, the Court reflected on the proof needed to
rebut the statutory presumption.

.The Uniform Securities Act provision, read in
light of *People v Henderson, supra,* must be inter-
preted to mean that once the state establishes a
prima facie case of statutory violation, the burden
of going forward, i.e., of injecting *some competent
evidence* of the exempt status of the securities,
shifts to the defendant. However, once the defen-
dant properly injects the issue, the state is obliged
to establish the contrary beyond a reasonable
doubt. [*Id.* at 713-714.]

While the Court acknowledged that the con-
cealed weapons statute and the Uniform Securities
Act used different language, it concluded that both
compelled analogous results—once the defendant

interjects some competent evidence of an exemption, the state is required to establish the contrary beyond a reasonable doubt.

> We are cognizant of the fact that the concealed weapons statute speaks of the "burden of establishing" the license, and states that this does not shift the "burden of proof for the violation." While the language might be preferable to that of the instant statute, the principle is not different. [*Dempster* at 712.]

The instant statute, read in light of *Henderson* and *Dempster,* establishes a prima facie case of statutory violation. However, the defendant may show an exception to or exemption from the statutory mandate by offering some competent evidence of a prescription during trial. At that point, the prosecution is required to establish the contrary beyond a reasonable doubt.[6]

Obviously, the amount of proof the prosecutor must present will be determined by the strength of the defendant's proofs. In this respect, the procedure used in insanity cases is instructive.

> A defendant in a criminal proceeding is presumed sane. Once any evidence of insanity is introduced, however, the prosecution bears the burden of establishing defendant's sanity beyond a reasonable doubt. . . .
>
> The nature and quantum of rebuttal evidence of sanity sufficient to present an issue for a jury is to

---

[6] See also *People v Bates,* 91 Mich App 506, 516; 283 NW2d 785 (1979) (authored by Justice RILEY) ("Upon defendant's presentation of some competent evidence that he is authorized by license [a readily ascertainable fact particularly within his knowledge], the people must then prove to the contrary beyond a reasonable doubt"); *People v Bailey,* 85 Mich App 594, 599; 272 NW2d 146 (1978) ("And, if the defendant adduces any evidence of authorization, the people must also prove beyond a reasonable doubt that he had no such authorization").

some extent determined by the strength of the case for insanity. Necessarily, the sufficiency of evidence needed to put the question of sanity before a jury will vary from case to case. Merely some evidence of sanity may be sufficient to meet some evidence of insanity and yet wholly insufficient to meet substantial evidence of insanity. [*People v Murphy,* 416 Mich 453, 463-464; 331 NW2d 152 (1982). Citations omitted.]

## II

Although the lead opinion agrees that the defendant must present "some competent evidence" of a prescription, it holds that

to satisfy this standard in the context of the possession statute, defendant must come forward with more than his own mere assertion that he had a prescription. [*Ante,* p 295.]

While the defendant's "own mere assertion" may not compel a jury to accept that the defendant possessed the controlled substances pursuant to a valid prescription, it is nevertheless "some competent evidence."

Furthermore, the lead opinion claims that its standard does not "always require" paper documentation, however, the examples it offers as sufficient are either paper documentation or its equivalent.

The lead opinion demands more than "some competent evidence." It heightens the burden the defendant is forced to meet, contrary to existing case law. It is with this heightened standard that I voice my disagreement.

## III

The defendant presented "some competent evi-

dence" that he obtained the controlled substances pursuant to a valid prescription. The defendant testified that he obtained prescriptions for the controlled substances from doctors while working out of state. The defense offered documented evidence of a continuous back injury. Furthermore, an expert testified that the substances found in the defendant's possession were the type of medication typically prescribed for the condition suffered by the defendant.

In light of the evidence, I agree with the Court of Appeals that the nondocumentary evidence presented by the defendant was sufficient to rebut the prima facie case of a statutory violation. However, I disagree with its holding that the defendant is entitled to a new trial. The trial judge properly instructed the jury that the prosecution bore the burden of proving the absence of a prescription as an element of the charged offenses. It was in the province of the jury to determine whether the prosecution fulfilled its burden. There is no reason to upset the jury's conclusion that the prosecution proved the absence of a prescription beyond a reasonable doubt. Accordingly, I would reinstate the defendant's convictions.

LEVIN, J., concurred with CAVANAGH, C.J.

BOYLE, J. I concur in the majority's result, which reverses the Court of Appeals decision and reinstates the defendant's conviction. I also agree with the lead opinion's rejection of the defendant's constitutional argument. I write separately because the lead opinion's interpretation of MCL 333.7531; MSA 14.15(7531) ignores the plain meaning of the statute. Contrary to its assurances that only the constitutionality of this particular conviction is being addressed, by refusing to recognize

that the statute shifts the burdens of production *and* persuasion onto the defendant, the lead opinion would alter the burden of proof established by the statute. If, as the lead opinion would hold, the burden of production, once met, shifts back to the prosecution, its interpretation effectively would read out of the statute the words "[t]he burden of proof of an exemption or exception is upon the person claiming it." MCL 333.7531(1); MSA 14.15(7531)(1). The lead opinion's justification appears to be the failure of the parties to correctly interpret the statute. However, a litigant's mistake does not alter this Court's obligation to uphold legislative enactments that meet constitutional muster. I would hold that § 7531 constitutionally places "[t]he burden of proof" both of production and persuasion, on a defendant claiming an exemption under the statute.

This opinion is divided into three sections. In the first, I address the lead opinion's failure to justify its adoption of an interpretation of § 7531 directly at odds with the plain language of the act. In the second part of the opinion, I explain why the statute is not constitutionally defective. In the third section, I attempt to explain how the regulatory nature of § 7531 makes rebutting the exemption extremely difficult when compared to more traditional affirmative defenses.

I

Section 7531 squarely places the burden of proving the existence of a prescription on the defendant:

(1) *It is not necessary for this state to negate*

*any exemption or exception in this article* in a
complaint, information, indictment, or other plead-
ing or in a trial, hearing, or other proceeding
under this article. *The burden of proof of an
exemption or exception is upon the person claim-
ing it.*

(2) In the absence of proof that a person is the
authorized holder of an appropriate license or
order form issued under this article, the person is
presumed not to be the holder of the license or
order form. The burden of proof is upon the person
to rebut the presumption. [MCL 333.7531; MSA
14.15(7531). Emphasis added.]

In other words, it is incumbent on a defendant
charged with an offense regarding a substance that
may be lawfully possessed pursuant to a license or
order form to prove that such possession is author-
ized by the existence of such permission. This
language on its face applies only to those sub-
stances that the state has not chosen to regulate
by criminalizing all possession. Thus, possession of
prescription drugs, unlike other controlled sub-
stances such as heroin, is subject to criminal pen-
alty only when it is not authorized by a prescrip-
tion. In obvious recognition of "the insurmounta-
ble task of producing evidence to prove lack of a
prescription," *ante* at 295, the Legislature has
placed both the burden of production and the
burden of proving the exemption on the person
claiming it.

The lead opinion does not persuasively contest
this reading of § 7531,[1] nor could it; "when legisla-
tive intent is clearly revealed in an unambiguous
statute, the plain language of the statute must be
enforced." *Kammer Asphalt Paving Co v East
China Twp Schools,* 443 Mich 176, 183; 504 NW2d

---

[1] *Ante* at 282-283.

635 (1993).[2] Rather, the lead opinion relies primarily on the failure of the parties to argue this interpretation of the statute to explain the failure to apply § 7531 as written.

The lead opinion states that because "the trial court and the parties have interpreted § 7531 as involving the burden of *production*," *ante* at 289, n 10 (emphasis in original), the lead opinion would limit its "holding to the constitutionality of § 7531 as it was applied in this case." *Ante* at 292, n 13. If the lead opinion had merely reinstated the defendant's conviction pursuant to § 7531, the need to fully interpret the statute may have been avoided, although such a resolution would have been of limited value to the bench and bar. However, in the present case, the lead opinion also would set an evidentiary threshold to be met in future cases, see part III, pp 294-300. By doing so, the lead opinion endorses an interpretation of § 7531 that would in future cases shift only the burden of production to the defendant, thus requiring the prosecution to face the task of proving lack of a prescription beyond a reasonable doubt. Despite its assurances, the lead opinion has not left "for another day the question whether . . . Michigan" allows the shifting of the burden of persuasion on the defendant. *Ante* at 292, n 13.

The lead opinion would achieve the right result at the cost of weighing this defendant's direct testimony against that of a more credible defendant's assertion. Such balancing is usually inappropriate when a defendant presents direct evidence in support of an affirmative defense. Professor McCormick notes that while the amount of

---

[2] See also *Achtenberg v East Lansing,* 421 Mich 765, 770; 364 NW2d 277 (1985), in which Justice CAVANAGH, writing for a unanimous Court, noted: "When the language of a statute is clear, courts must apply it as written."

evidence necessary to shift the burden of production to the prosecution in circumstantial evidence cases is often controversial,

> [g]enerally no difficulty occurs where the evidence is direct. Except in rare cases, it is sufficient, though given by one witness only, however negligible a human being she may be. [2 McCormick, Evidence (4th ed), § 338, p 434.]

The defendant in the present case testified in his own behalf. That testimony certainly should have been enough to shift the burden to the prosecutor *if* this statute placed only the burden of production on the defendant.

The lead opinion's creation of an evidentiary threshold for the defendant implicitly acknowledges the problem of requiring the prosecutor to "rebut the claim . . . [by contacting] the thousands of practicing physicians to prove the negative, that each had not prescribed the drugs to the defendant." *Ante* at 295. However, the remedy for that quandary is not to create an evidentiary threshold based on an appellate court's evaluation of the sufficiency of a given defendant's testimony. Such an approach invades the factfinder's province, invites abuse by trial courts, and leaves the prosecution's predicament intact. The appropriate remedy is the one selected by the Legislature, which in the plain language of the statute has placed the burden of proof and production on the defendant.

In this context, I cannot agree with the decision to defer to the interpretation of § 7531 advanced by the trial judge and the parties. As Justice VOELKER once observed in typically puckish fashion, "[i]t is of course elementary that litigants cannot bind us by their interpretation of a statute, however wrong and however much their interpretation, if they persuaded us to follow it, might help

them lose their case."³ *State Highway Comm'r v
Simmons,* 353 Mich 432, 438; 91 NW2d 819 (1958).
In the present case, the only conceivable reason
for not interpreting the statute as written would
be if it unconstitutionally shifted the burden of
proof to the defendant. It is to the constitutional
question that I now turn.

II

The lead opinion does not explain how it is
unconstitutional to place the burden of persuasion
on the defendant. In fact, the rejection by the lead
opinion of the defendant's constitutional argument
is so broad that it would seem to allow the applica-
tion of the statute as written:

> The language concerning a prescription or other
> authorization refers to an exemption rather than
> an element of the crime. Because § 7531 requires
> defendant to bear the burden of proof regarding
> presence of a prescription, and that fact is not
> determinative of an essential element of the crime
> of possession of Valium and Xanax, § 7531 is not
> violative of due process. [*Ante* at 292-293.]

As the lead opinion recognizes, the controlling
United States Supreme Court decision, *Patterson v
New York,* 432 US 197; 97 S Ct 2319; 53 L Ed 2d
281 (1977),⁴ requires no more of a statute. Other
authority from the federal courts bears this out.

---

³ See also *Detroit v Beckman,* 34 Mich 125, 126 (1876) (opinion of
COOLEY, J.), "the admission of a rule of law could not obligate the
court to accept and act upon it."

⁴ The United States Supreme Court reaffirmed *Patterson* in *Martin
v Ohio,* 480 US 228, 232-234; 107 S Ct 1098; 94 L Ed 2d 267 (1987),
observing:

> [In *Patterson*] [w]e . . . emphasized the preeminent role of
> the States in preventing and dealing with crime and the
> reluctance of the Court to disturb a State's decision with
> respect to the definition of criminal conduct and the procedures

In *Woods v Butler,* 847 F2d 1163 (CA 5, 1988), cert den 488 US 970 (1988), the United States Court of Appeals was faced with a claim for habeas corpus relief in a case presenting an issue nearly identical to that in the present controversy. The relevant state statute provides:

> It shall not be necessary for the state to negate any exemption or exception set forth in this part in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this part, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit. [La Rev Stat 40:990A.]

The defendant, convicted of possession of a controlled substance, phenmetrazine, argued that the state statute impermissibly shifts the burden of proof of an element of the crime onto the defendant in violation of the Due Process Clause of the United States Constitution.

by which the criminal laws are to be enforced in the courts, including the burden of producing evidence and allocating the burden of persuasion.

\* \* \*

It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, i.e., that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such an instruction would relieve the State of its burden and plainly run afoul of *Winship's* mandate. 397 US [358] 364 [90 S Ct 1068; 25 L Ed 2d 368 (1970)]. The instructions in this case could be clearer in this respect, but when read as a whole, we think they are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime.

The United States Supreme Court has continued to cite *Patterson* and *Martin* with approval. *Walton v Arizona,* 497 US 639, 650; 110 S Ct 3047; 111 L Ed 2d 511 (1990); *Schad v Arizona,* 501 US 624, 639-640; 111 S Ct 2491; 115 L Ed 2d 555 (1991); *Gilmore v Taylor,* 508 US —, —; 113 S Ct 2112, 2117; 124 L Ed 2d 306 (1993).

The court rejected the defendant's argument and affirmed the conviction:

Balancing the interests of the state in the effective and efficient administration of justice with a defendant's right that ·the state prove the existence beyond a reasonable doubt of each element of a crime before conviction, the Supreme Court has concluded that, a state may permissibly place (1) the burden of going forward with evidence and (2) the burden of persuasion by a preponderance of the evidence as to an affirmative defense on the accused. *Martin v Ohio,* 480 US 228; 107 S Ct 1098; 94 L Ed 2d 267 (1987); see also *Simopoulos v Virginia,* 462 US 506; 103 S Ct 2532; 76 L Ed 2d 755 (1983); *Patterson v New York [supra]. [Woods* at 1165.]

The court continued by explaining some of ' the common-sense reasons for the burden shift:

An individual accused of possession of a controlled dangerous substance who claims to have a valid prescription authorizing the possession of the drugs is in the best position to possess knowledge of the facts necessary to prove the defense—the prescribing doctor, the reason for the prescription, and the location from which the controlled substance was obtained. Further, it cannot be disputed that Louisiana may constitutionally criminalize and punish the act of possessing a controlled dangerous substance. [*Id.* at 1166.]

Finally, the court also recognized the constitutionality of the legislature's shift of the burden of persuasion, not just of production, as in the comparable federal statute:

In comparing the provisions of the federal Controlled Substances Act with the similar provisions in the lcdsl [Louisiana Controlled Dangerous Substance Act], we are mindful that while Louisiana

places the burden of persuasion of an exception on the defendant, the federal statute requires only that the defendant come forward with evidence of the exception. In this regard, the government retains the ultimate burden of persuasion on the exception under the federal act. However, because the Supreme Court has concluded that a state may properly place not only the burden of going forward with evidence of a defense on the accused, but also the burden of persuasion of that defense on the accused, the fact that the Louisiana act requires more of the defendant than the federal act does not render the LCDSL constitutionally infirm. [*Id.* at 1167.]

*Woods* is instructive not only because it declares that the shift of the burden of persuasion is constitutional, but also because it recognizes that not all legislative schemes dealing with the burden of proof are alike, nor need they be. As *Patterson* made clear,[5] as long as the statute does not violate the constitution by placing on the defendant the burden of persuasion to negate an element of the crime, the states are free to define crimes, exemptions, and defenses as they will.

The lead opinion states that "[t]he statute here is analogous to the concealed weapon statute interpreted by this Court in *People v Henderson*, 391 Mich 612; 218 NW2d 2 (1974)." *Ante* at 290. However, as comparisons of the statute indicate, the analogy is not convincing. MCL 776.20; MSA 28.1274(1) provides in pertinent part:

[5] McCormick, commenting on *Patterson*, observed:

> The court in *Patterson* decided the constitutionality of the allocation of the burden of proof by a formalistic analysis of state law: due process was not violated because the defendant did not have the burden of proof on any fact that state law had identified as an element of the offense. [Evidence (4th ed), § 347, p 483.]

> In any prosecution for the violation of any acts
> of the state relative to use, licensing and posses-
> sion of pistols or firearms, the burden of establish-
> ing any exception, excuse, proviso or exemption
> contained in any such act shall be upon the defen-
> dant but does not shift the burden of proof for the
> violation.

Unlike the language in § 7531, which relieves the
state of the burden of negating an exemption, and
places the burden of proof of an exemption on the
person claiming it, the concealed weapons statute
arguably states that the burden of proof "for the
violation" does not shift.

Moreover, the significance of the comparison is
questionable. As the lead opinion notes, *Henderson*
was a pre-*Patterson* case, *ante* at 292, n 13, a fact
that may have colored the *Henderson* Court's view
of its ability to interpret the statute to place the
burden of persuasion on the defendant. In any
event, *Henderson*'s interpretation of a differently
worded statute does not justify a construction of
§ 7531 that effectively redacts the directive that
"[t]he burden of proof of an exemption or excep-
tion is upon the person claiming it."[6]

III

The approach of the lead opinion may reflect an
unarticulated concern for the consequences of cre-
ating affirmative defenses that shift the burdens of
production and persuasion. To the extent that it
can be assumed that this is the concern, it should
be clearly understood that the section in question
only creates an exemption to a regulatory mea-
sure, and as such does not implicate the concerns

---

[6] The same defects exist in *People v Dempster,* 396 Mich 700; 242
NW2d 381 (1976), which relies heavily on *Henderson* and was also
decided before *Patterson.*

raised by statutes that shift the burdens of production and persuasion of more traditional affirmative defenses.

McCormick observes that "[t]he term affirmative defense is traditionally used to describe the allocation of a burden, either of production or persuasion, or both, to the defendant in a criminal case." Evidence, *supra,* § 347, p 480. The same may be said of an "exemption." The difference is not in where the burden of persuasion lies,[7] but in the regulatory character of the exemption. By contrast with more traditional crimes where an affirmative defense in effect concedes the facial criminality of the conduct and presents a claim of justification or excuse, an exemption to a regulatory scheme asserts that the defendant's conduct was outside the reach of the particular regulation.

With a conventional affirmative defense, for example, some fact if proved, will completely or partially excuse the conduct of the accused. Thus, self-defense will completely excuse the crime of murder. Two things can be drawn from the murder example. First, the conduct of the accused is inherently wrongful, and thus socially condemned unless it occurs under circumstances indicating

---

[7] But see *People v Smith,* 71 Ill 2d 95, 105; 374 NE2d 472 (1978). The Supreme Court of Illinois, interpreting the criminal code of Illinois, defined an affirmative defense to shift only the burden of production onto the defendant, while an exemption placed both the burdens of production and persuasion onto the person claiming it. The court explained:

The legislature has added to the unlawful use of weapons statute a long litany of exemptions. Ten separately enumerated exempt categories apply . . . . For the State to be saddled with negating each defendant's place . . . would place impossible burdens upon the effective prosecution of this type of case. The legislature has avoided this problem by requiring the prosecution to prove each and every element of the offense beyond a reasonable doubt and by requiring the defendant to prove his entitlement to the exemption.

excuse or justification. The second, a closely related and not so obvious aspect of the self-defense example is that it is not unfairly difficult to disprove. In a state that places only the burden of production on the defendant, leaving the prosecutor with the burden of proving that the defendant did not act in self-defense, the prosecutor is faced with a burden that will vary appropriately with the case. Because murder is presumed wrongful, and because the level of evidence that the prosecutor will need to meet the burden of proof beyond a reasonable doubt is proportional to the level of proof introduced by the accused, the question whether the people will prevail will depend largely on the strength of the defendant's evidence. Such a system rationally measures the truth. The defendant who produces more evidence of self-defense causes the prosecutor's burden on rebuttal to rise. The defendant who introduces only slight evidence raises the prosecutor's burden only slightly.

Regulatory schemes, on the other hand, often involve conduct that is not on its face wrongful. The controlled substances statute, MCL 333.7101 *et seq.*; MSA 14.15(7101) *et seq.,* is a mixed scheme covering a range of behavior that spans the obviously illegal, as with possessing and delivering most schedule one substances,[8] to the presumptively legal, such as the possession of many of the drugs available by prescription. In cases involving presumably illegal behavior, like possessing heroin, the circumstances are more akin to the traditional affirmative defense. In defense of possession of heroin, where the burden of proof rests on the prosecution to show knowledge, the prosecution

[8] Schedule one substances, MCL 333.7211; MSA 14.15(7211), have no "accepted medical use in treatment in the United States or lack[ ] accepted safety for use in treatment under medical supervision."

faces the same situation it faces with self-defense: the conduct is presumed wrongful, and the level of evidence that the prosecutor will need to meet the burden of proof of knowledge beyond a reasonable doubt is proportional to the level of proof introduced by the accused. The question whether the people have proven knowledgeable possession thus depends largely on the strength of the defendant's evidence.

The situation is far different further down the regulatory ladder. In cases such as the present one, the conduct is not obviously wrongful. It is regulated because the state has determined that it must be for the health and welfare of Michigan's citizens. But regulation in the case of schedule four substances, MCL 333.7218; MSA 14.15(7218), means an individual has a privilege by license or other means to possess certain drugs. A prescription is relatively easily obtained from a doctor and filled at a local pharmacy, and the fact that one has been obtained is information naturally possessed by the person obtaining it. The prosecutor, who must disprove the exemption, the prescription, is faced with the difficult burden[9] of proving a negative without the reasonable means to do so. Unlike the case of presumed wrongful conduct, where the prosecutor's burden is proportional to the defendant's proofs, in cases involving conduct only made illegal by regulation, a simple assertion by the defendant that his possession is by prescription increases the prosecutor's burden of proof to the point that a conscientious jury may be obligated to find that the government had not shown guilt beyond a reasonable doubt. This increase in the prosecutor's burden is not rationally tied to

[9] If disproving the exemption was an element of the offense, it would be a nearly impossible burden.

the truth, but to the method of regulating the activity.

The Legislature understood how difficult it would be for a prosecutor to rebut a defendant's simple assertion in a case such as the present one. It also understood how difficult it would be to regulate the activity employing such an approach. That presumably is why the Legislature placed the burdens of production and persuasion on the defendant. It will be a rare individual legally in possession of a controlled substance who will not be able to show a prescription, remember the name of a doctor, or remember the name of a pharmacist.

While cases such as *Patterson* leave no doubt that the Due Process Clause of the federal constitution permits the state to allocate the burdens as it has done in this case, it must be clearly understood that for the uncertain period between *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970), and *Patterson,* the traditional affirmative defense, which involved mitigation or justification of concededly criminal conduct, shifted only the burden of production to the defense. The traditional exemption, by contrast, involves activity that is unlawful only when engaged in without compliance with regulatory restraints, such as licensure, reporting, or other governmental authorization.

Self-defense is a true affirmative defense because at common law all homicide was murder. The possession of weapons, the receipt of money, the possession of prescription drugs, and a host of other activity is criminally proscribed only when it is engaged in without the authorization the government deems necessary for its control. Such statutes are directed to compliance with regulations deemed necessary to control otherwise lawful

activity.[10] In these situations, when the burden of proving noncompliance undermines the regulatory scheme, the Legislature may opt to transfer the burdens both of production and persuasion to the individual who claims his conduct is lawful because it falls into an exemption to the regulations imposed on his activity.

Thus properly understood, applying the exemption or exception provision of § 7531 as written bodes no ill jurisprudential consequences for other portions of this statute or other "true" affirmative defenses. The state has not sought to make unknowing possession of a controlled substance an offense by placing the burden on a defendant to show he did not know that what he possessed was a controlled substance.

## CONCLUSION

Section 7531 is an obvious and constitutional statute. The lead opinion does not forcefully argue otherwise. Rather, when all is said and done, the only justification by the lead opinion for its decision to ignore the language of this obvious and constitutional piece of legislation is a misunderstanding of the statute. Because I believe that the Court's analysis is dictated by the plain language of a constitutional statute, I would hold § 7531 places the burdens of production and persuasion on the defendant.[11] The fact that it was not so

---

[10] Nothing in this opinion is meant to suggest that the Legislature could not constitutionally place the burden of persuasion on the defendant in cases involving traditional affirmative defenses. It is clear from *Martin v Ohio, supra,* that such burden shifting is permitted. Rather, the comparison between regulatory and traditional affirmative defenses is meant to illustrate the common-sense reasons why our Legislature chose to place both the burden of production and provision on the defendant.

[11] We leave for another day the question what standard of proof must be presented by a defendant to meet the burden of persuasion under § 7531. See *Martin, supra.*

placed in the present case was to the defendant's benefit. I concur in affirming the conviction and reversing the decision of the Court of Appeals.

RILEY and GRIFFIN, JJ., concurred with BOYLE, J.