**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 29, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                       No. 126727

DAVID MICHAEL PERKINS,

    Defendant-Appellant.

_____

**BEFORE THE ENTIRE BENCH**

**PER CURIAM**

We granted leave in this case to consider two issues involving MCL 750.224f, which sets forth restrictions concerning the possession[1] of firearms by persons having been convicted of a felony. The first is whether larceny from the person is a "specified felony" for the purposes of MCL 750.224f(6)(*i*), thus subjecting defendant to more stringent requirements in order to regain his right to possess a firearm. We conclude that larceny from the

_____

[1] Although we mention only possession in this opinion, MCL 750.224f does not pertain only to the possession of firearms, but also to the use, transportation, sale, purchase, carrying, shipping, receiving, or distribution of firearms.

person involves a substantial risk that force will be used during its commission and, therefore, hold that it is a specified felony.

The second issue is whether the prosecution is always required to show that a person convicted of a specified felony has not had his or her right to possess a firearm restored pursuant to MCL 750.224(2)(b), or whether the prosecution's burden to disprove restoration only arises if the defendant first introduces evidence that the defendant's right to possess a firearm has been restored. We conclude, on the basis of MCL 776.20 and *People v Henderson*, 391 Mich 612, 616; 218 NW2d 2 (1974), that the defendant has the burden of producing evidence to establish that his or her right to possess a firearm has been restored. Once the defendant meets this burden of production, the prosecution bears the burden of persuasion beyond a reasonable doubt. In this case, defendant failed to produce evidence that his firearm rights were restored, and the prosecution thus was not required to prove the lack of restoration. Accordingly, we affirm the judgment of the Court of Appeals.

I. FACTS AND PROCEDURAL HISTORY

In 1977, defendant David M. Perkins was convicted of the felony offense of larceny from the person in violation of MCL 750.357. In 2001, Perkins was involved in an

2

altercation where he pointed a gun at another person, and, in the subsequent struggle, the gun discharged. As a result, Perkins was charged with, among other things,[2] being a felon in possession of a firearm (felon in possession) in violation of MCL 750.224f(2). This statute makes it a crime for a person who has been convicted of a "specified felony"-one that either involves a substantial risk of, or contains as an element the threatened, attempted, or actual use of, physical force against a person or property-to possess a firearm until that person has had the right to possess a firearm restored pursuant to MCL 28.424 and fulfilled certain other requirements.

The trial court, after a bench trial, concluded that the 1977 conviction for larceny from the person was a specified felony and, thus, MCL 750.224f(2) could apply to Perkins. Moreover, the court construed the statute as requiring the prosecution to prove that Perkins's right to possess a firearm had not been restored only if Perkins first affirmatively produced evidence that his right to possess had been restored by a proper concealed weapons licensing board. Therefore, the trial court convicted

---

[2] Defendant was also charged with felonious assault in violation of MCL 750.82, and possession of a firearm while committing or attempting to commit a felony in violation of MCL 750.227b. These charges are not at issue in this appeal.

Perkins of the offense because he had not produced any such evidence, thus relieving the prosecution of the burden of proving that Perkins's right to possession had not been restored.

The Court of Appeals affirmed.[3]  It concluded that larceny from the person constitutes a specified felony within the meaning of MCL 750.224f, and that a defendant must present evidence of a claimed restoration of the right to possess a firearm before the prosecution's burden of proving a lack of restoration arises.

We granted defendant's application for leave to appeal.[4]

## II.  STANDARD OF REVIEW

This case involves issues of statutory construction. These are issues of law that we review de novo. *People v Koonce,* 466 Mich 515, 518; 648 NW2d 153 (2002).  When interpreting statutes, our goal is to give effect to the intent of the Legislature by reviewing the plain language of the statute. *Id.*

## III. LARCENY FROM THE PERSON IS A "SPECIFIED FELONY"

---

[3] *People v Perkins*, 262 Mich App 267; 686 NW2d 237 (2004).

[4] 471 Mich 914 (2004).

MCL 750.224f[5] places felons in two different

[5] This statute provides, in part:

(1) Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:

(a) The person has paid all fines imposed for the violation.

(b) The person has served all terms of imprisonment imposed for the violation.

(c) The person has successfully completed all conditions of probation or parole imposed for the violation.

(2) A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:

(a) The expiration of 5 years after all of the following circumstances exist:

(i) The person has paid all fines imposed for the violation.

(ii) The person has served all terms of imprisonment imposed for the violation.

(iii) The person has successfully completed all conditions of probation or parole imposed for the violation.

(b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to section 4 of Act No. 372 of the Public Acts of 1927, being section 28.424 of the Michigan Compiled Laws.

categories. The first category consists of persons convicted of a "felony." These persons regain their right to possess a firearm three years after paying all fines imposed for their violations, serving all jail time imposed, and successfully completing all conditions of parole or probation. MCL 750.224f(1). The second category consists of persons convicted of a "specified felony." These persons must wait five years after completing the same requirements and, moreover, must have their right to possess a firearm restored. MCL 750.224f(2).

The term "specified felony" is defined in MCL 750.224f(6), which provides:

> As used in subsection (2), "specified felony" means a felony in which 1 or more of the following circumstances exist:
>
> (*i*) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that *by its nature*, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
>
> (*ii*) An element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance.
>
> (*iii*) An element of that felony is the unlawful possession or distribution of a firearm.
>
> (*iv*) An element of that felony is the unlawful use of an explosive.

6

(*v*) The felony is burglary of an occupied dwelling, or breaking and entering an occupied dwelling, or arson.  [Emphasis added.]

The prosecution in this case has neither alleged that an element of larceny from the person is "the use, attempted use, or threatened use of physical force against the person or property of another," MCL 750.224f(6)(*i*), nor that any of the criteria in subsections *ii* through *v* apply in this case.  Therefore, the inquiry is whether larceny from the person is a crime that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  We hold that it does.

The crime of larceny from the person consists of a larceny effectuated by "stealing from the person of another."[6]  The defendant acknowledges that there is a risk of force inherent in the crime of larceny from the person because of the potential for the victim to notice the taking of his or her personal property and use force to prevent it.[7]  However, he claims that such a risk is not substantial.  We disagree.

---

[6] MCL 750.357.

[7] At oral argument, defense counsel stated, "I certainly don't dispute that there's a risk in any larceny from a person because of the requirement that the larceny has to occur either from the person or near the person, there is a risk. . . .  As I said, there is always a risk,
(continued…)

7

"Substantial" is defined as "of ample or considerable amount, quantity, size, etc." *Random House Webster's College Dictionary* (1995). Therefore, the issue is whether larceny from the person by its nature involves a substantial or considerable risk that physical force will be used. We believe that it does. In order to commit a larceny from the person, the defendant must steal something from a person in that person's presence. That is, the victim must be present when the defendant steals something from the victim. Unless the victim submits to the theft or does not notice the theft, physical force will almost certainly be used in response.[8] As the Court of Appeals explained:

---

(…continued)
and nobody could deny there is always a risk in larceny from a person that violence may occur."

[8] Justice Cavanagh posits that "every felony" involves a risk of force. *Post* at 2 However, Justice Cavanagh fails fully to appreciate that not all felonies require the defendant to steal something from the victim's presence. Because a defendant must steal something from the victim's presence in order to commit a larceny from the person, a larceny from the person does not just pose *a* risk of force, it poses a *substantial* risk of force.

Justice Cavanagh also contends that, if detected, a perpetrator could "choose to avoid confrontation if it becomes apparent that force or the threat of force must be used to complete the intended act." *Post* at 3. However, if the perpetrator chooses to abandon the attempt to steal the property from the victim once detected, the perpetrator has not committed a larceny from the person. In order to commit a larceny from the person, the perpetrator would, in
(continued…)

8

[T]he offense of larceny from a person is separated from other larceny offenses because it is committed in the immediate presence of another person. The "Legislature decided that larceny from a person presents a social problem separate and apart from simple larceny." Specifically, "the invasion of the person or immediate presence of the victim." Because a person whose property is stolen from his presence may take steps to retain possession, and the offender may react violently, we conclude that the offense of larceny from a person, *by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*" We therefore hold that larceny from a person is a specified felony within the meaning of MCL 750.224f. [*Perkins, supra* at 272 (citations omitted; emphasis in the original).]

That the Legislature has recognized that larceny from the person involves a substantial risk of physical force is demonstrated by the different punishments that it has chosen to impose for larceny[9] and larceny from the person. If a defendant[10] steals property from another outside the person's presence and the property is worth less than $1,000, the defendant is only guilty of a misdemeanor. MCL

---

(…continued)
all likelihood, have to use force or the threat of force to steal the property from the victim. Therefore, a larceny from the person involves more than a "mere *potential*" of force or threat of force; *post* at 2, rather, it involves a "substantial" risk of force or threat of force.

[9] A larceny is committed when one steals the property of another outside the person's presence. MCL 750.356.

[10] All of the following hypothetical examples involve a defendant who does not have any prior larceny convictions.

9

750.356(4)(a).[11]  If the property is worth less than $200, the defendant cannot be imprisoned for more than ninety-three days.  MCL 750.356(5).[12]  On the other hand, if the same defendant steals the same property directly from the person, the defendant can be imprisoned for ten years.  A defendant who steals property from a person outside the person's presence can only face a ten-year sentence if the property is worth $20,000 or more.  MCL 750.356(2)(a).  That the Legislature has chosen to subject a defendant who steals property from a person in that person's presence to a ten-year sentence, regardless of the value of the property, and has chosen to subject a defendant who steals property worth less than $200 from a person outside that person's presence to a ninety-three-day sentence demonstrates that the Legislature recognized the substantial risk of force that is involved when one steals something from somebody's person, a risk that is absent when one steals something outside the person's presence.[13]

---

[11] A defendant who steals property from another outside the person's presence is only guilty of a felony if the property is worth $1,000 or more.  MCL 750.356(2)(a) and (3)(a).

[12] If the property is worth $200 or more, but less than $1,000, the defendant cannot be imprisoned for more than one year.  MCL 750.356(4)(a).

[13] Although it is not necessary to our analysis, we note that the federal courts have held that larceny from

(continued…)

10

Therefore, we hold that larceny from the person is a "specified felony" under MCL 750.224f(6)(i).

IV.  THE DEFENDANT BEARS THE BURDEN OF PRODUCING EVIDENCE THAT THE DEFENDANT'S FIREARM RIGHTS HAVE BEEN RESTORED

Subsection 2 of the felon-in-possession statute prohibits a person convicted of a specified felony from possessing a firearm "until" certain conditions are satisfied.  MCL 750.224f(2).  One of the conditions set forth in the statute is that the defendant's right to possess a firearm must have been legally restored.

MCL 750.224f(2) provides:

> A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state *until all of the following circumstances exist*:
>
> (a) The expiration of 5 years after all of the following circumstances exist:
>
> (*i*)  The person has paid all fines imposed for the violation.
>
> (*ii*)  The person has served all terms of imprisonment imposed for the violation.
>
> (*iii*)  The person has successfully completed all conditions of probation or parole imposed for the violation.

(…continued)
the person is a "crime of violence" for the purpose of the federal sentencing guidelines, which define a crime of violence as a crime that "involves conduct that presents a serious potential risk of physical injury to another." USSG 4B1.2(a)(2); *United States v Payne,* 163 F3d 371, 375 (CA 6, 1998).

11

(b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to section 4 of Act No. 372 of the Public Acts of 1927, being section 28.424 of the Michigan Compiled Laws. [Emphasis added.]

Thus, the statute provides that a person convicted of a specified felony may not possess a firearm "until" all the listed circumstances exist. Specifically, the felon may not possess a firearm "until" (1) five years have expired from the payment of all fines, the service of all terms of imprisonment, and the successful completion of all conditions of probation or parole, and (2) the person's right to possess a firearm has been restored. In this case, as noted in our discussion of the first issue, the prosecution established that the defendant was convicted of a specified felony and that he possessed a firearm.

The question remains, however, whether the prosecution must prove that the defendant's possession of the firearm occurred before the restoration of firearm rights where, as here, the defendant produced no evidence that his firearm rights had been restored. In answering this question, we must consider MCL 776.20, which states:

In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof for the violation.

12

It appears that the Legislature enacted this statute in response to *People v Schrader*, 10 Mich App 211, 217; 159 NW2d 147 (1968). In *People v Jiminez*, 27 Mich App 633, 635; 183 NW2d 853 (1970), the Court of Appeals stated:

> Prior to 1968, we would have given serious consideration to such an objection. *People v Schrader* (1968), 10 Mich App 211. However, in that year, the legislature took notice of our decisions holding that it was the burden of the prosecutor to prove that the defendant did not come within a statutory exception. The legislature responded by enacting a law [MCL 776.20] which held that, in trials for carrying concealed weapons, the burden is on the defendant to show that he comes within one of the exemptions.[14]

The broad language used in MCL 776.20 plainly extends to the felon-in-possession statute, MCL 750.224f, because it is a statute regarding the use, licensing, and possession of firearms. We must therefore give effect to the plain language of MCL 776.20 requiring the defendant to establish "any" exception, excuse, proviso, or exemption

---

[14] We disagree with Justice Kelly's assertion that MCL 776.20 cannot alter what the prosecution has to prove in order to obtain a conviction under MCL 750.224f. *Post* at 18. The Legislature has the authority to change the law if it wishes, and this is what it did by enacting MCL 776.20. After its enactment, MCL 776.20 was controlling. Moreover, contrary to Justice Kelly's statements, MCL 776.20 never altered MCL 750.224f because it predated it. This fact also undercuts Justice Kelly's rule of lenity and due process arguments because, when enacted, MCL 750.224f had to be read as fitting into the legal context already created by MCL 776.20.

contained in any statute "relative to use, licensing and possession" of firearms.

In applying the text of MCL 776.20, we adhere to this Court's interpretation in *Henderson*. In *Henderson*, this Court considered the effect of MCL 776.20 in a prosecution for carrying a pistol in a motor vehicle in violation of MCL 750.227. The issue was whether the prosecution or the defendant bore the burden of establishing whether the defendant had a license to carry a pistol. After considering the text of MCL 776.20, this Court concluded that the defendant bore the burden of *producing* evidence regarding licensure, while the prosecution bore the ultimate burden of persuasion.[15] Specifically, the *Henderson* Court stated:

> Accordingly, we hold that upon a showing that a defendant has carried a pistol in a vehicle operated or occupied by him, [a] prima facie case of violation of the statute has been made out. Upon the establishment of such a prima facie case, *the defendant has the burden of injecting the issue of license by offering some proof—not necessarily by official record—that he has been so licensed.* The people thereupon are obliged to establish the contrary beyond a reasonable doubt. [*Henderson*, *supra* at 616 (emphasis added).]

---

[15] Justice Kelly asserts that *Henderson* "cannot be correct" because it would mean that there are only two, not three, elements to the crime of carrying a concealed weapon in a vehicle. *Post* at 21-22. We are puzzled by this argument because we know of no requirement for a minimum, or a maximum, number of elements.

14

The interpretation set forth in *Henderson* accords with the well-established principle that "[c]ourts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). The *Henderson* Court gave effect to the entirety of MCL 776.20. By recognizing that the defendant bore the burden of producing or going forward with evidence that he was licensed, the *Henderson* Court gave effect to the statutory phrase "the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant . . . ." And by concluding that the prosecution bore the ultimate burden of persuasion beyond a reasonable doubt, the *Henderson* Court avoided rendering nugatory the phrase "but this does not shift the burden of proof for the violation."[16]

We thus adhere to the framework established in *Henderson*. Like the firearms offense considered in

---

[16] While it is not necessary to our analysis, we note that the majority of courts in other states that have considered this issue has similarly allocated at least the burden of production regarding the lack of license to the defendant. See Anno: *Burden of proof as to lack of license in criminal prosecution for carrying or possession of weapon without license*, 69 ALR3d 1054.

15

*Henderson*, the offense of felon in possession falls within the strictures of MCL 776.20 requiring the defendant to establish "any exception, excuse, proviso or exemption . . . ." We may consult dictionary definitions of terms that are not defined in a statute. *Koontz*, *supra* at 312. The dictionary definition of the term "proviso" is instructive. A "proviso" is "an article or clause that introduces a condition: stipulation." *Webster's Seventh New Collegiate Dictionary* (1967). MCL 750.224f(2) contains a clause that introduces conditions that must be met before a person convicted of a specified felony may possess a firearm. Specifically, the five-year period from the specified events described in the statute must have expired, and the felon's firearm rights must have been restored. Until those conditions are satisfied, the felon may not possess a firearm.

We conclude that the felon-in-possession statute contains a proviso. Thus, we are bound to follow the plain language of MCL 776.20 and the analytic approach established in *Henderson*.

Defendant here produced no evidence to establish that his right to possess a firearm had been restored. Because defendant failed to meet his burden of production, the prosecution was not required to prove the lack of

16

restoration of firearm rights beyond a reasonable doubt. MCL 776.20; *Henderson*, *supra* at 616.

## V.   CONCLUSION

We conclude that larceny from the person is a crime that carries a substantial risk that physical force will be used or threatened against another.   Therefore, we agree with the Court of Appeals that it qualifies as a specified felony under MCL 750.224f(6)(*i*).

Also, a defendant bears the burden of producing evidence to establish that his or her right to possess a firearm has been restored, in light of MCL 776.20 and this Court's decision in *Henderson*.   Because defendant failed to meet his burden of production in this case, the prosecution was not required to prove the lack of restoration of firearm rights beyond a reasonable doubt. Accordingly, we affirm the judgment of the Court of Appeals.

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                              No. 126727

DAVID MICHAEL PERKINS,

    Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

We granted leave to appeal in this case to address two questions: (1) whether larceny from a person is a "specified felony" for the purposes of MCL 750.224f(6)(*i*) and (2) whether, under MCL 750.224f(2)(b), the lack of restoration of the right to possess a firearm is an element of the offense. 471 Mich 914 (2004).

With regard to the first question, I believe that larceny from a person is a specified felony. Therefore, I concur in the result of the majority opinion on this issue. With respect to the second question, I believe that the lack of restoration of the right to possess a firearm is an element of the offense of felon in possession (possession of a firearm by someone convicted of a felony). Accordingly, I would hold that, to secure a conviction, the prosecution must show the lack of restoration of that

right. MCL 750.224f. Consequently, I dissent from the portion of the majority opinion dealing with that issue.

I would affirm in part the decision of the Court of Appeals, reverse it in part, and vacate defendant's convictions and sentences.

## I.   UNDERLYING FACTS AND PROCEDURAL HISTORY

Defendant was arrested after a dispute involving a firearm. He was charged with felonious assault,[1] felon in possession,[2] and possession of a firearm when committing or attempting to commit a felony (felony-firearm).[3]

The court acquitted him of the assault charge, concluding that, at the time of the offense, he was too intoxicated to formulate the intent necessary for the crime. Defendant stipulated that he had been convicted in 1977 of larceny from a person. MCL 750.357. The court convicted him of the two firearm charges. It ruled that defendant's admissions of the 1977 felony conviction and of possessing a firearm provided sufficient evidence to convict him of the offense of felon in possession.

---

[1] MCL 750.82.

[2] MCL 750.224f.

[3] MCL 750.227b.

2

On appeal, the Court of Appeals affirmed[4] the trial court's rulings stating: "The prosecutor must prove that the defendant's right to possess a firearm has not been restored only if the defendant produces some evidence that his right has been restored." *Id.* at 271. It also concluded that larceny from a person constitutes a specified felony within the meaning of MCL 750.224f. It reasoned:

> Because a person whose property is stolen from his presence may take steps to retain possession, and the offender may react violently, we conclude that the offense of larceny from a person, "*by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*" [*Id.* at 272, quoting MCL 750.224f(6)(*i*) (emphasis in original).]

We granted leave to appeal.

## II. FELONIES AND SPECIFIED FELONIES

Both questions before this Court involve issues of statutory construction. Hence, we review them de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004). The first question is whether larceny from a person is a specified felony under the felon-in-possession statute. MCL 750.224f.

_____

[4] *People v Perkins*, 262 Mich App 267; 686 NW2d 237 (2004).

3

The statute divides felonies into two types, "felonies" and "specified felonies." A person convicted of a "felony" can legally possess a firearm three years after (a) completing all terms of imprisonment imposed for the violation, (b) paying all fines imposed for the violation, and (c) completing all conditions of probation or parole. MCL 750.224f(1).

A person convicted of a "specified felony" must satisfy the same requirements and must obtain restoration of the right to possess a firearm pursuant to MCL 28.424. Also, the person must wait five years after completion of the statutory requirements, as compared to three years for other felonies.

The Legislature defines "specified felony" in MCL 750.224f(6). It provides:

> As used in subsection (2), "specified felony" means a felony in which 1 or more of the following circumstances exist:
>
> (*i*) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that *by its nature*, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
>
> (*ii*) An element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance.
>
> (*iii*) An element of that felony is the unlawful possession or distribution of a firearm.

4

(*iv*) An element of that felony is the unlawful use of an explosive.

(*v*) The felony is burglary of an occupied dwelling, or breaking and entering an occupied dwelling, or arson. [Emphasis added.]

All parties agree that subsections *ii* through *v* do not apply to this case. Therefore, to constitute a specified felony, defendant's 1977 conviction of larceny from a person must fall within the definition in subsection *i*.

The use, attempted use, and threatened use of force are not elements of larceny from a person. In fact, the absence of force and the absence of the threat of force are what distinguish larceny from a person from robbery. *People v Randolph*, 466 Mich 532, 544; 648 NW2d 164 (2002).

But subsection *i* includes more crimes than just those in which force is an element. It includes crimes that, by their nature, involve a substantial risk of the use of force.

### III. A SUBSTANTIAL RISK OF FORCE

In this case, defense counsel conceded at oral argument that larceny from a person involves a risk that force will be used. However, he asserted that the risk is not "substantial."

"Substantial" is defined as "of ample or considerable amount, quantity, size, etc." *Random House Webster's College Dictionary* (2001). The question becomes whether,

5

during the commission of a larceny from a person, there is an "ample or considerable amount" of risk that force will be used.

The statute prohibiting larceny from a person provides:

> Any person who shall commit the offense of larceny by stealing *from the person* of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years. [MCL 750.357 (emphasis added).]

Hence, larceny from a person requires direct contact with the victim. The perpetrator must take personal property from the victim while it is in the victim's possession. This increases the risk that force will be used. A perpetrator is obliged to use force or threaten the use of force to obtain the property unless the victim willingly submits to or remains ignorant of the theft.[5] Larceny from a person quickly evolves into robbery when force is employed to complete the theft.

Physical force may be used during the commission of many felonies, especially if the perpetrator is caught in

---

[5] Justice Cavanagh argues that the perpetrator could abort the attempt to obtain the property when it becomes apparent that he may need to use or threaten force to obtain the property. But if the perpetrator aborts the attempt to obtain the property, larceny from a person will not be committed. I center my analysis on what may occur if the perpetrator does not abort the attempt. Under those circumstances, I believe that the risk of force is "substantial."

6

the act.  However, the risk that force will be used during a larceny from a person is considerably greater than the risk of force in many other felonies.  This is because the crime, by its nature, is often confrontational and always involves the presence of the victim.  Its perpetration requires either direct contact with or the actual presence of the victim.  Also, the risk of detection is heightened. With an ample risk of confrontation and detection comes an ample risk of the use or threatened use of force to complete the crime.[6]  Therefore, larceny from a person involves a "substantial" risk of the use or threat of physical force.

Additionally, the very structure of the larceny statute, when compared with the larceny-from-a-person statute, supports a conclusion that the Legislature recognized that larceny from a person involves a substantial risk that force will be used.  The general larceny statute[7] allocates punishment according to the value of the property taken.  For example, if the property is

_____

[6] Justice Cavanagh notes that almost every felony runs some risk of the use of force.  But his analysis does not consider the fact that larceny from a person requires contact with or the presence of the victim every time the crime is committed.  This distinguishes it from many felonies that can be committed without the victim being in harm's way.

[7] MCL 750.356.

valued at from $200 to $1,000, the thief is guilty of a misdemeanor punishable by as much as one year in jail, a $2,000 fine, or both. MCL 750.356(4). But if it has a value of from $1,000 to $20,000, the crime is a felony punishable by as much as five years' imprisonment, a $10,000 fine, or both. MCL 750.356(3).

This contrasts with larceny from a person, which abandons a gradation of punishment. The defendant is subject to a possible ten years in prison without regard to the value of the property stolen. MCL 750.357.

The only difference between the crimes of larceny and larceny from a person is the presence of the victim. Without question, the possibility of harm to the victim is greater if the property is taken from his person. Consequently, it appears that the threat to the victim was of greater concern to the Legislature than the loss of the property, and hence, it provided a greater penalty for larceny from a person.

The magnitude of the difference in penalties demonstrates just how seriously the Legislature viewed the risk of force against the victim of a larceny from a person. If the value of the property taken in a normal larceny is less than $200, the defendant is subject to no more than ninety-three days in jail. But, if the defendant takes that same property directly from a person, he is

8

guilty of a felony and subject to potentially ten years in prison. MCL 750.356(5); MCL 750.357.

The only logical reason for the great difference in penalties is that a significant danger exists that force will be used, injuring the victim of a larceny from a person. Therefore, the Legislature viewed that crime as involving a substantial risk that physical force will be employed against another. This qualifies it as a specified felony under MCL 750.224f(6)(*i*).

### IV. RESTORATION OF RIGHTS IS AN ELEMENT OF MCL 750.224f(2)

#### A. THE LANGUAGE AND STRUCTURE OF MCL 750.224f(2)

Section 2 of the felon-in-possession statute indicates the circumstances under which a person convicted of a specified felony may possess a firearm. MCL 750.224f(2). One of the requirements contained in that statute is that the defendant must have had his right to possess a firearm legally restored.

But in this case, the prosecution argues that it need not show that restoration has not occurred in order to establish the elements of the crime. Rather, it asserts that it is defendant who bears that burden. Neither the

language nor the structure of the statute supports the prosecution's contention.[8]

MCL 750.224f(2) provides:

> A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state *until all of the following circumstances exist*:
>
> (a) The expiration of 5 years after all of the following circumstances exist:
>
> (*i*) The person has paid all fines imposed for the violation.
>
> (*ii*) The person has served all terms of imprisonment imposed for the violation.
>
> (*iii*) The person has successfully completed all conditions of probation or parole imposed for the violation.
>
> (b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to section 4 of Act No. 372 of the Public Acts of 1927, being section 28.424 of the Michigan Compiled Laws. [Emphasis added.]

---

[8] I would hold that the prosecution must show the lack of restoration contingent on its failure to show that (1) five years have not passed since all fines were paid, (2) five years have not passed since all jail time was served, or (3) five years have not passed since the defendant successfully completed all conditions of probation or parole. The prosecution would have the option of carrying its burden on only one of the four subparts of MCL 750.224f(2). Once it proves one of the four, it need not go further. Therefore, I believe that the Legislature intended the prosecution to choose which element of MCL 750.224f(2) to address. But the contingent nature of the element should not change on whom the burdens of production and persuasion lie.

10

In interpreting MCL 750.224f(2), our goal is to give effect to the Legislature's intent. *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002). We start with the language of the statute itself. The language of MCL 750.224f(2) demonstrates a clear intent to include among the prosecution's proofs a showing that the right to possess a firearm was not restored to the defendant.

B. CREATION OF AN EXCEPTION BY USE OF THE TERM "UNLESS"

The Legislature has demonstrated that it knows how to create an exception, and it created one in subsection 4 of the very statute in question. MCL 750.224f(4) provides:

> This section does not apply to a conviction that has been expunged or set aside, or for which the person has been pardoned, *unless* the expunction, order, or pardon expressly provides that the person shall not possess a firearm. [Emphasis added.]

By using the term "unless," it demonstrated its intent to create an exception.[9] "Unless" is an exclusionary term. By contrast, in subsection 2 of the felon-in-possession statute, the Legislature chose not to use an exclusionary term. Instead, it used the phrase "until all."

---

[9] The Legislature has repeatedly used the term "unless" to create an exception in the Penal Code. Examples are: MCL 750.14, MCL 750.42b(2), MCL 750.50(2)(g), MCL 750.51, MCL 750.61, MCL 750.115(2), MCL 750.141, MCL 750.144, MCL 750.147a(1), MCL 750.197(3), and MCL 750.216.

Looking at the definition of "until" helps demonstrate that "until all" is an inclusive phrase. The definition is "1. up to the time that or when; till. 2. before . . . 3. onward to or till . . ." *Random House Webster's College Dictionary* (2001). Applying this definition to the statute, the defendant is guilty of the offense of felon in possession only if he (1) was convicted of a specified offense and (2) possessed a firearm "before" (a) the passage of five years from the time he paid all pertinent fines, or he served his term, or he successfully completed all conditions of probation or parole, or (b) his right to possess a firearm was not restored. MCL 750.224f(2).

Therefore, to prove the crime, the prosecution must demonstrate that the possession occurred "before" one of the specified events. If the prosecution fails to prove this, it has not met the burden created by the Legislature.

The result would be quite different had the Legislature chosen to use an exclusionary term like "unless." "Unless" is defined as "1. except under the circumstances that . . . 2. except; but; save[.]" *Random House Webster's College Dictionary* (2001).

Substituting this word into the statute would change the statute's meaning, so that the prosecution would need to prove only that the defendant (1) had been convicted of a specified offense and (2) possessed a firearm. The

12

defendant would be left to produce evidence that, more than five years before, he had (1) paid all pertinent fines, (2) served his term, (3) successfully completed all conditions of probation and parole, and that (4) he currently had the right to possess the firearm.

Hence, the difference in the burden of production on the prosecution and on the defense is enormous depending on whether "until" introduces an element or an exception. Accordingly, we should assume that the decision to use "until" rather than "unless" was carefully made.

We presuppose that the words the Legislature uses have a purpose. And we should not speculate that it inadvertently used one word or phrase when it intended another. The chosen wording is presumed intentional. *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931).

When writing this statute, the Legislature demonstrated a clear knowledge of how to create an exception, but it chose not to do so. Its use of the term "until" is a strong indication that it intended the restoration of rights to be a contingent element of the offense.

Because the Legislature chose to use the term "until," the prosecution bears the burden of production for MCL 750.224f(2). Here the prosecution failed to present any

13

evidence that defendant's right to possess a firearm had not been restored.  And it made no effort to show that any of the three other factual circumstances listed in MCL 750.224f(2) had not occurred.  Hence, it did not satisfy its burden, and defendant's convictions were in error.

### C.  MCL 776.20

The majority asserts that MCL 776.20 controls this case and holds that it requires that defendant bear the burden of production regarding the restoration of the right to possess a firearm.  MCL 776.20 provides:

> In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof for the violation.

MCL 776.20 comes into play only after the prosecution proves all the elements of a crime.  Therefore, for the majority's argument to have merit, I would have to accept the conclusion that MCL 750.224f(2)(b) is an exception.  As discussed above, this conclusion is implausible given the language and structure chosen by the Legislature.

I find MCL 776.20 inapplicable to this case.  I believe that, if the Legislature had intended MCL 776.20 to apply, it specifically would have used a term contained in that statute.  Alternatively, it would have used its often

repeated term "until," or a similarly clear expression, to create an exception or a proviso.

The words "exception,[10] excuse,[11] proviso[12] or exemption[13]" in MCL 776.20 apply to situations where all the elements of a crime have been established. Once the prosecution has satisfied all the elements, it is for the defendant to produce evidence showing the existence of a circumstance excusing him from culpability.[14]

_____

[10] "Except" means "to exclude; leave out." *Random House Webster's College Dictionary* (2001).

[11] "Excuse" means "to release from an obligation or duty." *Random House Webster's College Dictionary* (2001).

[12] A "proviso" is "a clause, as in a statute or contract, by which a condition is introduced" or "a stipulation or condition." *Random House Webster's College Dictionary* (2001).

[13] "Exempt" means "to free from an obligation or liability to which others are subject; release." *Random House Webster's College Dictionary* (2001).

[14] Some may argue that the definition of "proviso" could apply to any clause. But I believe that the Legislature intended it to apply only to clauses relieving a defendant of liability. This is indicated by its placement in a list with "exception," "excuse," and "exemption." The doctrine of *noscitur a sociis* requires that this Court interpret terms in context with the other words around them. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420-422; 662 NW2d 710 (2003). When words are grouped in a list, they must be given related meaning. *Third Nat'l Bank in Nashville v Impac, Ltd, Inc*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977). Interpretive aids, such as the doctrine of *noscitur a sociis*, are meant to aid us in arriving at the meaning intended by the Legislature. By using a term in a list, the Legislature gave this Court a legitimate means of

(continued…)

An example of a situation in which MCL 776.20 would apply can be seen in MCL 750.224f(4): "This section does not apply to a conviction that has been expunged or set aside, or for which the person has been pardoned . . . ." This subsection creates an exception to the felon-in-possession crime. Under MCL 776.20, the defendant would have the burden of producing evidence to prove the exception.[15]

In MCL 776.20, the Legislature demonstrated its ability to use the terms "exception," "excuse," "exception," and "proviso." But in 750.224f(2), it used none of them. It could have stated in MCL 750.224f(2):

> A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a

---

(…continued)
finding its intent. The main goal in interpreting any statute is to ascertain and give effect to the Legislature's intent. *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005). By interpreting the word "proviso" in the context it was used, I have chosen to give effect to the Legislature's demonstrated intent.

[15] Some may claim that my analysis renders sections of MCL 776.20 nugatory. But this is not true. I simply find the statute inapplicable to this case. It would fully apply to other statutes actually containing an exception, excuse, proviso, or exemption. MCL 750.224f(4) provides an example of when I would apply MCL 776.20. A defendant would bear the burden of proving that his crime had been expunged, set aside, or pardoned. Just because I disagree with the application of MCL 776.20 to this case does not mean that my reading renders it nugatory.

firearm in this state *providing the following circumstances do not exist.*

Or:

A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state, *except when all of the following circumstances exist.*

Or:

A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state, *but the person is excused when the following circumstances exist.*

Instead of any of these or other wordings, the Legislature chose to use "until all." I believe this is a strong indication that it intended that MCL 776.20 should not apply to MCL 750.224f(2).

In interpreting statutes, we are reluctant to assume that the Legislature wrote what it did by accident or error. But this is what the majority presumes in its holding today. I support giving effect to the Legislature's chosen phrasing rather than changing it to fit within MCL 776.20.[16]

---

[16] I believe that the majority has misunderstood my argument in n 14 of its opinion, *ante* at 13. Of course I know that the Legislature can change the law. My point is that the Legislature intentionally drafted MCL 750.224f(2) so that MCL 776.20 would not apply to it. The Legislature enacted MCL 750.224f(2) after it enacted MCL 776.20. Hence, it knew when it wrote MCL 750.224f(2) that MCL 776.20 requires the defendant to shoulder the burden of

(continued…)

The existence of MCL 776.20 does not alter what the prosecution has to prove in order to obtain a conviction for felon in possession.  But reading MCL 750.224f(2)(b) as a proviso does shift the burden of production from what the Legislature intended, because it turns what is an element of the crime into a proviso.

### D.  *PEOPLE V PEGENAU*

The prosecution relies on *People v Pegenau*[17] to support its argument.  This reliance is misplaced.  In *Pegenau*, the defendant was charged with unlawful possession of Xanax and Valium pursuant to MCL 333.7403(1).[18]  *People v Pegenau*, 447 Mich 278, 281; 523 NW2d 325 (1994).  The only question at trial was whether the defendant had a valid prescription,

_____

(…continued)

production in matters involving a proviso.  Accordingly, if it had wanted to make a proviso in MCL 750.224f(2), it knew it had to write the statute to clearly contain a proviso. Since it did not do that, we must conclude that it did not intend a proviso.

[17] *People v Pegenau*, 447 Mich 278; 523 NW2d 325 (1994).

[18] MCL 333.7403(1) provides:

A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

18

which would exclude him from prosecution under the language of MCL 333.7403 and MCL 333.7531.[19] *Pegenau, supra* at 282. This Court held that the burden of proof regarding the existence of a valid prescription was on the defendant.

*Pegenau* is distinguishable from the present case because MCL 333.7403 expressly uses a term creating an exception. In fact, MCL 333.7403 uses the term "unless." As discussed above, "unless" is defined as "1. except under the circumstances that . . . 2. except; but; save[.]" *Random House Webster's College Dictionary* (2001). Because an exception is specifically created, the defendant bears the burden of production under MCL 333.7531.

---

[19] MCL 333.7531 provides:

(1) It is not necessary for this state to negate any exemption or exception in this article in a complaint, information, indictment, or other pleading or in a trial, hearing, or other proceeding under this article. The burden of proof of an exemption or exception is upon the person claiming it.

(2) In the absence of proof that a person is the authorized holder of an appropriate license or order form issued under this article, the person is presumed not to be the holder of the license or order form. The burden of proof is upon the person to rebut the presumption.

(3) A liability is not imposed by this article or an authorized state, county, or local officer, engaged in the lawful performance of the officer's duties.

In contrast, MCL 750.224f(2) does not provide an exception or exemption to felon-in-possession prosecutions. The Legislature did not use a term that would create an exception. It used the inclusive phrase "until all." Therefore, the subsections are elements of the crime rather than exceptions, and MCL 776.20 does not apply.

*Pegenau* is inapplicable and is in clear contrast to this case. Therefore, I find it of no support to the prosecution's argument.

### E. *PEOPLE V HENDERSON*

The majority finds *People v Henderson*[20] persuasive on the issue whether restoration of the right to possess a firearm is an element of felon in possession. I believe that this decision does not aid the majority's position.[21] Moreover, I find that *Henderson* was wrongly decided.

*Henderson* dealt with MCL 750.227, which, at that time, provided:

> Any person who shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on

---

[20] 391 Mich 612; 218 NW2d 2 (1974).

[21] I also find *Henderson* simply inapplicable to this case because it does not analyze the core question before us. That question is what language in a statute constitutes an exception, excuse, proviso, or exemption. *Henderson* becomes relevant only after a determination is made that an exception, excuse, proviso, or exemption exists.

20

or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him; and any person who shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license to so carry said pistol as provided by law, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than five years, or by fine of not more than two thousand five hundred dollars.

The *Henderson* Court concluded that, as regards the facts of that case, the only elements of the crime were: (1) the defendant was carrying a pistol and (2) he was in a vehicle operated or occupied by him. It ruled that the language "without a license to so carry said pistol" did not add an element to the offense. *People v Henderson*, 391 Mich 612, 616; 218 NW2d 2 (1974).

This conclusion cannot be correct. If only two elements existed, the sole defenses available to a defendant would be (1) that he did not carry a pistol or (2) that he was not in a vehicle with it. Whether the defendant was licensed to carry that pistol would not matter. He would be guilty of the crime, even though licensed, because he (1) carried a pistol (2) in a vehicle.

It is obvious that there is a third key element. It is found in the statute's language "without a license."[22]

My interpretation is strengthened by the fact that, in writing MCL 750.227, the Legislature did not use any of the terms listed in MCL 776.20. The clause "without a license" is not prefaced by anything signaling or otherwise phrased to signal that it constitutes an exception, excuse, proviso, or exemption.

Contrast this with the language "except in his dwelling house or place of business or on other land possessed by him" that is also contained in the statute. The Legislature knew how to create an exception, excuse, proviso, or exemption when it wrote MCL 750.227. And, in fact, it did so in that statute by explicitly using the term "except." But it did not use any of those terms with respect to the lack of a license. Again, the Legislature's choice of wording should not be presumed accidental. *Redford Twp*, *supra* at 456.

To rule as it did, the *Henderson* Court had to read words into the statute. Specifically, it had to read in some form of exception, excuse, proviso, or exemption

___

[22] Contrary to the majority's contention, I do not suggest that there are a minimum number of elements that must be contained in a criminal statute. Rather, I am pointing out that this statute has three elements. The *Henderson* Court recognized only two of them.

before the language "without a license."  But this violates the well-established rule of statutory construction that a court cannot read into a statute what is not there.  *AFSCME v Detroit*, 468 Mich 388, 412; 662 NW2d 695 (2003).[23]

Therefore, the *Henderson* Court failed to construe the language actually chosen by the Legislature.  Instead, it added language to change the burden of production.  The majority today falls into the same trap.  And in doing so, it violates its own repeatedly stated rule of statutory construction.

### F.  THE MAJROITY'S PHILOSOPHICAL CONTRADICTIONS

The justices of the majority have departed from their own rules of statutory construction in construing MCL 750.224f(2).  During this very court term, most of the same justices stated:

> Fundamental canons of statutory interpretation require us to discern and give effect to the Legislature's intent as expressed by the language of its statutes.  If such language is unambiguous, as most such [sic] language is, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.

---

[23] This is a principle often repeated by this majority. See *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004), *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003), *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003), *Lesner v Liquid Disposal, Inc*, 466 Mich 95, 101; 643 NW2d 553 (2002), and *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

[*Garg v Macomb Co Community Mental Health Services*, 472 Mich 263, 281; 696 NW2d 646 (2005) (citations and quotation marks omitted).]

There is no suggestion that the majority finds the language in MCL 750.224f(2) ambiguous.  Hence, it violates its own rules of statutory interpretation when it relies on decisions in sister states to interpret the intent of the Michigan Legislature.  Under the majority's judicial philosophy, reference to outside material is of no value in the face of a clear text.

Moreover, the citation of the annotation at 69 ALR3d 1054 adds nothing to the majority's analysis of the statute in this case.  The decisions cited in the annotation are based on widely divergent statutory language in other states.  Because that language is so different from the language of MCL 750.224f(2), conclusions in the annotation are of no assistance in determining what the Michigan Legislature intended when enacting our statute.

Beyond this, at least some of the cases cited in the annotation demonstrate that a legislature can create an easily recognizable exception or proviso when it desires to do so.  For example, the Pennsylvania statute provides that no person shall carry a firearm in public "'*unless . . . such person is licensed to carry a firearm*[.]'" *Commonwealth v Bigelow,* 250 Pa Super 330, 332; 378 A2d 961 (1977), quoting 18 Pa Consol Stat 6108 (emphasis added).

24

Clearly the Michigan Legislature could have done what the Pennsylvania legislature did: it explicitly created an exemption.[24]

Furthermore, even under the analysis offered by the majority, *Henderson* was wrongly decided. One thing the majority and I agree about in the instant case is that an exception, excuse, proviso, or exemption has to be clearly indicated by the language of the statute. In the statute before us, MCL 750.224f(2), the majority argues that the word "until" introduces a proviso.

In contrast, the statute involved in *Henderson* contains nothing preceding the language "without a license" that could be argued to introduce an exemption, excuse, proviso, or exemption.[25] Therefore, I believe that, under the majority's analysis, *Henderson* must be found to have been wrongly decided. In addition, its reliance on *Henderson* contradicts the majority's analysis discussing exceptions, excuses, provisos, and exemptions. In the end,

---

[24] As noted above, the Legislature used the same "unless" language to create an exception in MCL 750.224f(4).

[25] "Without" does not qualify. "Unless the defendant possesses" would qualify. As with the statute at issue in this case, the Legislature could have phrased the critical language as an exemption, but it chose not to do so.

*Henderson* offers nothing supportive of the majority's construction of MCL 750.224f(2).

Again, the Legislature knows how to use the terms "exception," "excuse," "proviso," or "exemption." And it knows how to create exceptions by the use of the term "unless," as it has repeatedly done throughout the Penal Code. But the Legislature chose not to use *any* of those terms in either MCL 750.224f(2) or MCL 750.227, the statute analyzed in *Henderson*. I would not turn a blind eye to those choices. Instead, I would enforce the statutes as the Legislature wrote them. In this case, it requires finding that the restoration of the right to possess a firearm is an element of the offense of felon in possession.

### G. THE BURDEN PLACED ON THE PROSECUTION

The prosecution asserts that, if it must initially go forward with evidence that defendant's right to possess a firearm has not been restored, its burden of proof will be rendered too difficult. It argues that, to make this showing, it would have to obtain certificates showing no restoration of defendant's right to possess firearms from all eighty-three counties in Michigan.

I believe that this is a wildly exaggerated approach to the situation. Normally, to satisfy MCL 750.224f(2), the prosecution would have to show simply that five years

had not passed since the defendant served his term or completed probation or paid his fines. Only if none of those situations existed would it become necessary to address whether the right to carry a firearm had been restored. And then, in almost every case, the prosecution could show that the defendant resided in one or two counties while eligible to have the right restored and that those counties had not restored the right.

My reading of the statute requires more proofs from the prosecution then it would prefer. But the fact that it may find difficulty in proving a crime does not provide a reason for this Court to rewrite the law to change the Legislature's intent. I am satisfied that the language of the statute demonstrates that a showing of no restoration of the right to possess a firearm is an element of the crime. Hence, the burdens of production and persuasion are on the prosecution.

## H. THE RULE OF LENITY

A consistent textualist would have to admit that no language in MCL 750.224f(2) or MCL 750.227 creates an explicit exception, excuse, proviso, or exemption. At most, those statutes could be read to infer an exception or proviso by adding words to them. By finding an exception and a proviso, the majority violates its textualist philosophy. Its holding today seems to require that any

27

time words can be added to a statute to form an exception or proviso, those words should be added. Surely, this does not give effect to the text of the statute as written. Rather, it reads into the statute what the Legislature did not include and perhaps chose not to include. Not only is this inconsistent with the majority's "plain language" textualist approach, it also violates the rule of lenity.

Courts have long held that any ambiguity regarding the scope of criminal statutes must be resolved in favor of lenity. *Huddleston v United States*, 415 US 814, 830-831, 94 S Ct 1262; 39 L Ed 2d 782 (1974), quoting *Rewis v United States*, 401 US 808, 812; 91 S Ct 1056; 28 L Ed 2d 493 (1971). This is part of the time-honored rule that penal statutes are construed in favor of the defendant. As Chief Justice Marshall of United States Supreme Court stated in 1820:

> The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment. [*United States v Wiltberger*, 18 US (5 Wheat) 76, 95; 5 L Ed 37 (1820).]

I believe that a court may go beyond the text of a statute when it is ambiguous or when serious questions arise regarding the reasonable meaning of its language.

28

But when weighing the words of a criminal statute, the court must place on the scales the rule of lenity. This rule requires that the statute be construed strictly in favor of the defendant.

Here, the majority disregards the language contained in MCL 776.20 and effectively finds that, if certain words are added to form an exception or proviso, the statute should be read that way. This interpretation violates the rule of lenity. Far from reading the statute in favor of defendant, it requires that the statute be read to disfavor him.

I believe that my interpretation of the statute best gives effect to the Legislature's intent. And it best adheres to the long-established tradition of applying the rule of lenity to criminal statutes. The majority's construction violates the spirit of the rule of lenity. And it turns a hardened eye on the "tenderness of the law for the rights of individuals . . . ." *Wiltberger, supra* at 95.

Instead of following this longstanding rule, the majority focuses on the potential burden placed on the prosecution. I continue to adhere to the rule of lenity. Therefore, I would hold that the prosecution bears the burden of production regardless of whether it might, at times, find that burden difficult.

## I. THE DUE PROCESS PROBLEM

This Court has ruled that exemptions and provisos in criminal statutes must be defined with specificity.

> Exemptions and provisos within a criminal statute must be defined with the same specificity as the prohibitive language of the statute.
>
> This court is not able, within the bounds of due process, to "interpret" a criminal statute which contains an ambiguous exemption such that it results in conviction of the defendant charged in the specific case. That is not the "fair warning" demanded by the Constitution. [*People v Dempster*, 396 Mich 700, 715; 242 NW2d 381 (1976) (citation omitted).]

Therefore, when a "clarifying gloss" is placed on a statute by a court, it can apply only to future violations. It cannot apply retroactively. This includes cases that clarify when an exemption or proviso exists. *Id*. at 715-717.

This case constitutes the first instance when the "clarifying gloss" in question has been placed on MCL 750.224f(2). Therefore, at the least, the majority's interpretation of the statute cannot apply retroactively. Because the majority finds for the first time that the statute contains a proviso, defendant did not have constitutional fair warning of what he would have to prove. Accordingly, his conviction cannot stand. *Dempster*, *supra* at 717-718.

30

### J. My Conclusion Regarding the Felon-in-Possession Statute

The felon-in-possession statute indicates clearly that the prosecution has the burden of showing that five years have not passed (1) since the defendant paid all fines, or (2) since the defendant served his term of imprisonment, or (3) since the defendant successfully completed all conditions of probation or parole, or of showing (4) that the defendant's right to possess a firearm has not been restored. In this case, the prosecution concedes that it presented no evidence showing that one of the four occurrences did not take place. Therefore, it failed to satisfy its burden. Accordingly, I would reverse the decision of the Court of Appeals in part and vacate defendant's convictions and sentences.

### V. Conclusion

The risk that force will be used during a larceny from a person is considerably greater than the risk of force in many other felonies. This is because the crime, by its nature, is often confrontational and always involves the presence of the victim. Therefore, I concur with the majority that larceny from a person is a specified felony.

But I dissent from the majority's holding on the second issue. The felon-in-possession statute indicates clearly that the prosecution has the burden of production and persuasion on all the elements of the offense. This

includes the lack of restoration of the right to possess a firearm.

I would affirm in part the decision of the Court of Appeals, reverse it in part, and vacate defendant's convictions and sentences.

Marilyn Kelly

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                               No. 126727

DAVID MICHAEL PERKINS,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I disagree with the majority's position that the crime of larceny from the person is a specified felony pursuant to MCL 750.224f(6). Because I believe that larceny from the person is not a specified felony under MCL 750.224f(6), I do not reach the issue whether the lack of restoration of firearm rights is an element of MCL 750.224f(2). Accordingly, I respectfully dissent.

The Legislature has defined a "specified felony" as including a felony in which the following circumstance exists:

> An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or

property of another may be used in the course of committing the offense.  [MCL 750.224f(6)(*i*).][1]

Larceny from the person is defined as follows:  "Any person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years."  MCL 750.357.  Larceny from the person differs from robbery because larceny from the person is committed without the use of force or the threat of force.  "[R]obbery is a larceny aggravated by the fact that the taking is from the person, or in his presence, accomplished with force or the threat of force."  *People v Randolph*, 466 Mich 532, 544; 648 NW2d 164 (2002).  By its very nature, larceny from the person involves the *absence* of force or threat of force.

While I agree with the majority that there is a risk of force or threat of force when larceny from the person is committed, this is essentially the case with *every* felony. Indeed, one can conceive of a risk of force in almost every situation in which a felony is committed.  However, I do not believe that the mere *potential* for force or threat of force, or the mere *potential* that a perpetrator *may* become

_____

[1]  Other subsections of the statute specifying additional circumstances that also define a specified felony are not applicable in this case.

2

confrontational if detected, means larceny from the person presents a "*substantial* risk" of force or threat of force. A perpetrator could just as likely choose to avoid confrontation if it becomes apparent that force or the threat of force must be used to complete the intended act. Therefore, because there is not a "*substantial risk*" of force or threat of force when larceny from the person is committed, I respectfully dissent.

Michael F. Cavanagh

3